**NATIONAL LOCKWASHER CO. v.
GEORGE K. GARRETT CO., Inc.**

No. 8115.

Circuit Court of Appeals, Third Circuit.
Argued April 19, 1943.
Decided July 13, 1943.

Rehearing denied Sept. 2, 1943.

Leonard L. Kalish, of Philadelphia, Pa. (Paul & Paul and Henry N. Paul Sr., all of Philadelphia, Pa., on the brief), for defendant-appellant.

Newton A. Burgess, of New York City (William H. Foulk, of Wilmington, Del., and H. H. Hamilton, of New York City, on the brief), for plaintiff-appellee.

Before MARIS and GOODRICH, Circuit Judges and GANEY, District Judge.

GOODRICH, Circuit Judge.

On an earlier appeal to this Court Loutrel patent 1,655,018 for a compression spring washer was upheld and the case remanded with instructions to reinstate the bill, decree the patent valid and infringed, and direct an accounting. 98 F.2d 643 (1938). The litigant is again here, this time upon the accounting phase of the litigation, the defendant having appealed from the judgment rendered upon the report of a special master which awarded the sum of $17,994.25 to the plaintiff.

In the court below and again in this Court, the defendant raised one point, which, if sustained, would deny the plaintiff any recovery whatever. It is based

upon the theory that the plaintiff, as patentee, has so abused his rights acquired under the patent that he is entitled to no relief in this litigation. The argument stems from a series of Supreme Court decisions. Motion Picture Patents Co. v. Universal Film Mfg. Co., 1917, 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann.Cas.1918A, 959; Carbice Corporation of America v. American Patents Development Corporation, 1931, 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819; International Business Machines Corp. v. United States, 1936, 298 U.S. 131, 56 S.Ct. 701, 80 L.Ed. 1085; Leitch Mfg. Co. v. Barber Co., 1938, 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371; Interstate Circuit, Inc., v. United States, 1939, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610; Ethyl Gasoline Corporation v. United States, 1940, 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852; Morton Salt Co. v. G. S. Suppiger Co., 1942, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363; B. B. Chemical Co. v. Ellis, 1942, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367; United States v. Univis Lens Co., Inc., 1942, 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408; United States v. Masonite Corporation, 1942, 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461.

The patentee, it is said, issued licenses to various manufacturers of metal washers under a standard form of license agreement. Each license issued, it is claimed, contained a provision to the effect that the licensee agrees, while the agreement is in force, that it will not manufacture any other form of non-tangling spring washers except those covered by the patent in suit. It is not disputed that there are other forms of unpatented non-tangling spring washers than those involved in the Loutrel patent. So what we have here, assuming the facts as above stated, is a patentee who gives a license to a manufacturer for a stipulated consideration, part of the consideration being that the licensee will abstain from manufacturing any other kind of non-tangling spring washer except those covered by the license.

■■ The Supreme Court has made it abundantly clear in the series of decisions above cited that the patentee cannot use his patent monopoly to force upon customers his brand of a non-patented article to be used by the customer in connection with the patented article sold or leased. The Carbice and International Business Machines cases are typical of this point.

And not only is a patentee under such circumstances open to attack by the public authorities, but he is precluded from the enforcement of his rights as patentee against an infringer so long as he is making such a use of a patent. The Morton Salt Company and the B. B. Chemical Co. decisions bring this out clearly. "The patentee, like these other holders of an exclusive privilege granted in the furtherance of a public policy, may not claim protection of his grant by the courts where it is being used to subvert that policy," says Mr. Chief Justice Stone in the Morton Salt case at page 494 of 314 U.S., 62 S.Ct. at page 406, 86 L.Ed. 363.

■■ These cases are different on the facts than the one here involved. The patentee in this case is not selling any unpatented goods under a tying-in clause to the licensee. But it is, as the facts are alleged by the defendant, using its patent monopoly to suppress the manufacture of possible competing goods not covered by its patent. Prior to the cases above cited the Supreme Court had held that a trade agreement involving price fixing and the suppression of a certain type of merchandise transcended what was necessary to protect the use of the patent or the monopoly which the law conferred upon it. Standard Sanitary Mfg. Co. v. United States, 1912, 226 U.S. 20, 49, 33 S.Ct. 9, 57 L.Ed. 107. We think the instant case, on the facts as the defendant represents them, falls within the principle of the cases cited to the extent that the patentee is using the lawful monopoly granted by the patent as a means of suppressing the manufacture and sale of competing unpatented articles. It is not creating for itself a monopoly for unpatented goods, as in some of the cases cited. But it is attempting by means other than that of free competition to extend the bounds of its lawful monopoly to make, use and vend the patented device to the extent where such device would be the only one available to a user of such an article. This monopoly is obviously not covered by the patent. A patentee's right does not extend to the use of the patent to purge the market of competing non-patented goods except, of course, through the process of fair competition.

■ When we come to the application of the above stated principles of law to the facts of this case we are confronted with a record which is not complete in detail.

The special master made one specific finding on the matter of the defendant's contractual policy. The District Judge regarded the point under discussion as outside the reference to the master. However that may be, it is not outside the scope of relevancy for us if we have the necessary facts on which a conclusion may be based.

The finding of the master is to the effect "That at the time when the defendant entered the business of manufacturing lock washers, the plaintiff had an identical license agreement covering its lock washer with five manufacturers." The defendant excepted to this finding, not on what the master found but because of its incompleteness. But we think that the finding together with uncontroverted evidence found in the record is sufficient for our conclusion.

The standard form of contract used by the plaintiff in licensing agreements was in evidence. That contract contains a clause that "(g) Licensee agrees that, while this agreement is in force, it will make and sell no form of non-entangling Spring Washers except such as are covered by said patent, and that it will not, either directly or indirectly, make or sell Spring Washers of the kind specifically excluded from this license under the provisions of Paragraph First (a) hereof." There was no dispute that this provision appeared in the licensing agreements given by the plaintiff to those who sought to make spring washers utilizing the plaintiff's patent.

We think this is enough; enough to show that the plaintiff was using its patent to suppress competition with it by non-patented articles. To the extent that the policy was successful the supply of competing non-patented washers would, of course, disappear.

■ Said Mr. Chief Justice Stone in United States v. Univis Lens Co., Inc., 1942, 316 U.S. 241, 251, 62 S.Ct. 1088, 1094, 86 L. Ed. 1408: "In construing and applying the patent law so as to give effect to the public policy which limits the granted monopoly strictly to the terms of the statutory grant, Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363, the particular form or method by which the monopoly is sought to be extended is immaterial." This statement of principle covers the situation here. The patentee

has disentitled itself to recover at present for infringement by reason of its utilization of its patent monopoly to drive unpatented competing goods from the market.

The judgment of the District Court is reversed and the case remanded with directions to dismiss the complaint.