**H-P-M DEVELOPMENT CORPORATION et al. v. WATSON-STILLMAN CO.**
Civil Action No. 7301.

District Court, D. New Jersey.
April 15, 1947.

Toulmin & Toulmin, of Dayton, Ohio (H. A. Toulmin, Jr., and Clayton E. Crafts, both of Dayton, Ohio, and S. Collin Minton, Jr., of Trenton, N. J., of counsel), for plaintiffs.

Stein, Stein & Hughes, of Elizabeth, N. J. (Kenyon & Kenyon, of New York City, of counsel) for defendant.

FORMAN, District Judge.

The H-P-M Development Corporation is the successor to the Hydraulic Press Corporation, Inc., which latter company together with the Hydraulic Press Manufacturing Company entered into a contract with the Watson-Stillman Company on September 11, 1937. The successor company and the Hydraulic Press Company are plaintiffs in this action and they allege, among other things that they own nineteen patents for inventions and designs on systems, apparatus for, and methods of operation of hydraulic presses of the self-contained, high speed and pressure type including all types of circuits, open and closed and methods of control. The companies named in the contract, a copy of which is annexed to the complaint, granted a license to defendant, Watson-Stillman Company, to make and sell apparatus embodying the subject matter of the patents as set forth in Schedule A of the contract, but not the power and control elements per se covered by Schedule C of the contract. It provided that the license was to run from September 15, 1937 for 10 years and that defendant was to pay a royalty of $1500 a year, 2½% on the first $250,000, 1¾% on the next $500,000 and 1½% on all sales above these amounts in any one year under conditions set forth in the contract as follows:

" * * * on all equipment manufactured and sold by Defendant embodying systems, apparatus for and methods of operation of hydraulic presses, the self-contained, high speed, oil pressure type, including all types of circuits and methods of control, including open and closed circuits and the power and control elements per se, unless such power and control elements

were purchased from plaintiffs. It was further specifically covenanted and agreed by and between the parties to said agreement that said royalty would be paid on all of the foregoing apparatus irrespective of whether or not any particular patent or patents of Plaintiffs was embodied therein."

It was further alleged that royalty payments should be accompanied by a report setting forth the serial number of the machine sold, date of sale, the sale price, and that suitable books of account should be kept by defendant of such transactions which should be open to inspection by the licensors, that defendant agreed to give preference to the purchase of the licensors' equipment where its value was equal to or better than that of the licensors' competitors, that defendant would not purchase, nor recommend the use of equipment known to be an infringement of the licensors' patents, that defendant agreed to mark the machines licensed with a suitable statutory notice of said patents, and that the parties agreed to communicate to one another any improvements in the respective fields of the subject matter of the patents.

The complaint further alleges that defendant manufactured an unknown number of machines under the license listed in Schedule A of which no reports were made of royalties, that defendant has failed to pay royalties under the license, has failed to report the serial numbers of machines sold under the license and has failed to permit plaintiff to inspect its books as agreed. Complaint is made that defendant has failed to give preference to plaintiffs' equipment, has neglected to mark machines with a suitable statutory notice, and has failed to communicate improvements as required by the contract. Plaintiffs further complain that defendant has placed an arbitrary interpretation on the term "self contained" as used in the contract in order to avoid payment under the contract.

In the prayers for relief plaintiffs request an injunction restraining defendant from destroying, secreting or moving its books of account from the jurisdiction of this court, and that defendant be required to account for profits.

Following the filing of the complaint plaintiffs moved for discovery and production of documents under Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. ·

Defendant opposed this motion. It moved to dismiss the complaint, among other things, for insufficiency of statement, because the contract is unenforcible on the ground that it is contrary to public policy and in violation of the anti-trust statutes.

The plaintiffs contend that the motion to dismiss is improper since issues are raised which should not be determined until after answer and trial, that the illegality of the contract must be pleaded affirmatively as required by 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and that it does not set forth with particularity the grounds therefor. as required by 7(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The objections raised by the defendant will be considered in the light of the complaint and the contract annexed thereto, to determine whether the issues propounded by the plaintiffs raise a doubt, for if so, the defendant must answer and the trial proceed.

The first objection raised by the defendant is that the contract unlawfully ties in as a condition of the license a provision that defendant must purchase from the licensors the power or control devices listed in Schedule C and under which defendant is not licensed or give the licensors a preference in the purchase thereof. This argument is predicated upon a series of cases holding tie-in agreements an abuse of rights acquired by the patents, and denying recovery under them as is set forth in the case of National Lockwasher Co. v. George K. Garrett Co., 1943, 3 Cir., 137 F.2d 255. They are: Motion Picture Patents Co. v. Universal Film Mfg. Co., 1917, 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A. 1917E, 1187, Ann.Cas.1918A, 959 (license agreement authorized manufacture and sale of patented machine but limited its use to unpatented films) ; Carbice Corporation of America v. American Patents Development Corporation, 1931, 283 U.S. 27,

51 S.Ct. 334, 75 L.Ed. 819 (patent for refrigerating transportation package, license limited its use to unpatented dry ice); International Business Machines Corp. v. United States, 1936, 298 U.S. 131, 56 S.Ct. 701, 80 L.Ed. 1085 (licensee of patented tabulating machine required to use unpatented tabulating cards); Leitch Mfg. Co. v. Barber Co., 1938, 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371 (patentee of concrete curing process required use of unpatented bituminous emulsion); Interstate Circuit, Inc. v. United States, 1939, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (owners of motion picture film copyrights licensed exhibitors for subsequent runs requiring minimum price); Ethyl Gasoline Corp. v. United States, 1940, 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852 (patentee of fluid compound licensed use of fluid for mixture with gasoline, controlled resale price, etc.); Morton Salt Co. v. G. S. Suppiger Co., 1942, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (patented dispensing machines required use of unpatented tablets); B. B. Chemical Co. v. Ellis, 1942, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367 (owner of method patent authorized manufacturer to use it only with unpatented material furnished by him); United States v. Univis Lens Co., Inc., 1942, 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408, and United States v. Masonite Corp., 1942, 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461 (patentee in each of the two cases last mentioned granted licenses by which it sought to control resale price of patented article). The court in the case of National Lockwasher Co. v. George K. Garrett Co., supra, stated:

"The Supreme Court has made it abundantly clear in the series of decisions above cited that the patentee cannot use his patent monopoly to force upon customers his brand of a non-patented article to be used by the customer in connection with the patented article sold or leased. The Carbice and International Business Machines cases are typical of this point. And not only is a patentee under such circumstances open to attack by the public authorities, but he is precluded from the enforcement of his rights as patentee against an infringer so long as he is making such a use of a patent. The Morton Salt Company and the B. B. Chemical Co. decisions bring this out clearly. 'The patentee, like these other holders of an exclusive privilege granted in the furtherance of a public policy, may not claim protection of this grant by the courts where it is being used to subvert that policy,' says Mr. Chief Justice Stone in the Morton Salt case at page 494 of 314 U.S., 62 S.Ct. at page 406, 86 L.Ed. 363." 137 F.2d at page 256.

Article 3 of the contract in this case provides that defendant will "give preference to the purchase of such equipment * * * where the value of the equipment of Hydraulic is equal to or better than that of Hydraulic's competitors." Article 4(d) provides that royalties due by defendant to plaintiff for the use of the Schedule A and other patents shall be subject to a reduction, rebate or credit amounting to 5% on the first $50,000, 7½% on the second $50,000, and 10% on the balance, on all equipment shown on Schedule C, purchased by defendant from plaintiff in any current year. At the end of Schedule A annexed to the contract there appears the following provision:

"In connection with the foregoing it is to be understood that any special controls or valves or other operating elements set forth in any of the foregoing patents under Schedule A are to be purchased by the licensee from the licensor: they are specified on Schedule C."

From these references defendant concludes that the contract requires it to purchase equipment listed in Schedule C, which was not licensed under the contract, or give the licensors a preference when making such purchases and contends that thereby there is created for the licensors an extension of their patent rights which renders the agreement invalid.

In the cases above cited there was no alternative but to purchase unpatented material along with the license for the patented devices, or be subjected to control in the fixing of re-sale prices or other conditions all designed to restrain competition or create unlawful monopoly.

This case is, at this juncture, distinguishable from them for the defendant is not required to purchase the devices in

Schedule C from the licensors unless their value to the defendant is the equivalent or greater than that of like products of the licensors' competitors. If defendant made such purchases it became entitled to the scheduled rebates. Upon the face of the complaint examined in the light of defendant's objection it is impossible to see distinctly a design upon the part of the plaintiffs to defeat competition and create monopoly as the defendant construes the contract, or a pattern to create competition as the plaintiffs equally emphatically urge. The attack upon the complaint does not result in the definitive conclusion that the arrangement was illegal. The test can be applied only after trial.

Secondly, defendant contends that the contract unlawfully ties in, as a condition of the license a provision that the defendant must recognize the validity of plaintiff's patents referred to in Schedule C and must not purchase, nor recommend, such equipment if known to be an infringement of these unlicensed patents, so that the intent and purpose of securing respect for the patents may be carried out. This objection stems from Article 3 of the contract wherein it is provided:

"Watson-Stillman further agrees that it will not purchase, nor recommend, the use of equipment that is a known infringement of Hydraulic's patents, it being the intent and purpose of this paragraph to encourage respect for the patents of the respective parties hereto."

■ The general rule is that a licensee, while exercising under the protection of the patent the right conferred by his license, is estopped to deny the validity of the patent, Steiner Sales Co. v. Schwartz Sales Co., 10 Cir., 1938, 98 F.2d 999. In the case of Pope Manufacturing Co. v. Gormully & Jeffrey, 1892, 144 U.S. 224, 12 S.Ct. 632, 36 L.Ed. 414, it was held that a licensee is not estopped to contest the validity of other patents held by his licensee which might be wholly void. In Sola Electric Co. v. Jefferson Electric Co., 1942, 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165, the licensee complained of a price fixing stipulation which violated the Sherman Act if it were not within the protec-

tion of patent monopoly, and was permitted to dispute the validity of the patent licensed to it. MacGregor v. Westinghouse Electric & Mfg. Co., 1947, 329 U.S. 402, 67 S.Ct. 421, 424, and Edward Katzinger Co. v. Chicago Metallic Mfg. Co., 1947, 329 U.S. 394, 67 S.Ct. 416, 424, were suits against the licensee of patents for royalties, and it was held that the licensee could dispute the validity of the patents. The same rule was applied in American Optical Co. v. New Jersey Optical Co., D.C.1943, 50 F.Supp. 806 and American Cutting Alloys, Inc. v. General Electric Co., 2 Cir., 1943, 135 F.2d 502, wherein the licensees had expressly contracted not to dispute the patent, and in Nachman Spring-Filled Corp. v. Kay Mfg. Co., 2 Cir., 1943, 139 F.2d 781, wherein there was no price fixing agreement but other provisions in restraint of trade.

None of the above cases is applicable here, for on the face of the contract, defendant's activity was restrained only in the field of "known" infringement, and at this point we are unable to say that this covenant is any more exacting than the patent laws would require in its absence. Hence, we conclude that the alleged illegality is not apparent and for that reason the objection is without merit now.

Thirdly, defendant contends that the contract unlawfully ties in, as a condition of the license, a provision that defendant must transfer to plaintiffs all of defendant's present and future patent rights in the defined field.

Article 2 of the contract provides for the grant by the defendant of a non-exclusive, indivisible, nonassignable license to the licensors under the patents owned by the defendant as listed in Schedule B annexed to the contract, as described in said Article 2. It also covers "any additions thereto which may be made from time to time, including any divisions, extensions or re-issues thereof."

Article 4(b) provides that such license shall be free to the licensors.

Article 7 provides for prompt interchange of communications between the parties concerning improvements within the respective fields of the subject matter

of the patents on Schedules A and B and they agree to apply for and secure such patents as they may thereon. The licensors also agreed to furnish confidential, technical information, etc., to defendant.

In article 8 the defendant, in consideration of the confidential information described in Article 7, agreed that it will not license any other manufacturer under its patents licensed under the agreement without the consent of the licensors and described the manner in which the parties should cooperate in processing patents for which defendant decided to apply on improvements, extensions and developments covered by Schedule B and as described in the agreement.

Defendant supported its argument with United States v. Parker-Rust-Proof Co., D.C.1945, 61 F.Supp. 805, in which the government brought suit for violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and the Clayton Act, 15 U.S.C.A. § 12 et seq. Patents of the defendant in that case had been previously held valid and infringed in an action between it and the American Chemical Paint Co., and on appeal, the defendant received an exclusive license from the American Company of all its patents, the court found as a fact that the primary purpose for entering into this agreement was to eliminate the American Company as a competitor, and concluded as a matter of law that the agreement was invalid.

Plaintiffs offer the case of Standard Oil Co. v. United States, 1931, 283 U.S. 163, 51 S.Ct. 421, 75 L.Ed. 926, in opposition to this objection. There the government brought suit for infringement of the anti-trust laws. Conflict in patents covering gasoline cracking processes arose, and four owners by agreement were released from liability for past and future infringement. Each acquired the right to use the patents and to share in license fees, and a division of royalties was established. The court stated:

"Where there are legitimately conflicting claims or threatened interferences, a settlement by agreement, rather than litigation, is not precluded by the Act. Compare Virtue v. Creamery Package Co., 227 U.S. 8, 33, 33 S.Ct. 202, 57 L.Ed. 393. An interchange of patent rights and a division of royalties according to the value attributed by the parties to their respective patent claims is frequently necessary if technical advancement is not to be blocked by threatened litigation. If the available advantages are open on reasonable terms to all manufacturers desiring to participate, such interchange may promote rather than restrain competition." 283 U.S. at page 171, 51 S.Ct. at page 424, 75 L.Ed. 926.

"Unless the industry is dominated, or interstate commerce directly restrained, the Sherman Act does not require cross-licensing patentees to license at reasonable rates others engaged in interstate commerce." 263 U.S. at page 172, 51 S.Ct. at page 425, 75 L.Ed. 926.

"Where domination exists, a pooling of competing process patents, or an exchange of licenses for the purpose of curtailing the manufacture and supply of an unpatented product, is beyond the privileges conferred by the patents and constitutes a violation of the Sherman Act. The lawful individual monopolies granted by the patent statutes cannot be unitedly exercised to restrain competition. * * * But an agreement for cross-licensing and division of royalties violates the Act only when used to effect a monopoly, or to fix prices, or to impose otherwise an unreasonable restraint upon interstate commerce." 283 U.S. at pages 174, 175, 51 S.Ct. at page 425, 75 L.Ed. 926.

"To warrant an injunction which would invalidate the contracts here in question, and require either new arrangements or settlement of the conflicting claims by litigation, there must be a definite factual showing of illegality." 283 U.S. at page 179, 51 S.Ct. at page 427, 75 L.Ed. 926.

The court declined to invalidate the arrangement attacked by the government.

In the first of the cases cited under this objection of defendant the court was convinced that the purpose of the pooling arrangement was to eliminate competition. In view of the language quoted in the second case it would appear to be necessary to hear the facts before reaching a conclusion with respect to the arrangement of which defendant complains. The provision

of the agreement does not disclose on its face an illegal design to eliminate competition, and, therefore, a determination of this issue must also await final hearing.

Fourthly, defendant contends that the contract unlawfully ties in as a condition of the license a provision that defendant shall pay a royalty on all of its hydraulic presses of the certain kind, whether or not covered by any patents of plaintiffs included in the license or whether or not the patents of plaintiff have expired or whether or not such patents are valid.

Article 4(c) of the contract provides for the payment of royalties:

"* * * on all equipment manufactured and sold by it embodying systems, apparatus for and methods of operation of hydraulic presses, the self-contained, high-speed, oil pressure type, including all types of circuits and methods of control and including open and closed circuits and the power and control elements per se, unless said power and control elements per se are purchased from Hydraulic as hereinafter provided. It is contemplated by the parties that in practice one or more patents and inventions of hydraulic will be embodied in the foregoing subject matter on which the royalty will be paid, and as a matter of convenience in accounting, said royalty will be paid on all of the foregoing apparatus, irrespective of whether or not any particular patent or patents of Hydraulic are embodied therein."

In Mercoid Corporation v. Mid-Continent Investment Co., 1944, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376, suit was brought for contributory infringement of a combination patent, and royalty payments were based upon the sales of a combustion stoker switch, an unpatented element of the combination. The court denied recovery on the ground that this was a misuse of the patent. A similar conclusion was reached in Philad Company v. Lechler Laboratories, Inc., 2 Cir., 1939, 107 F.2d 747. The plaintiff, as owner of a patent for a process of hair waving, was held to have improperly used the patent in an attempt to enlarge the monopoly to include unpatented devices used in the patented process. The licenses granted by the plaintiff provided that royalties be paid on the sales of the unpatented articles, rather than on the patented process. The patent was held unenforcible.

In American Optical Co. v. New Jersey Optical Co., D.C.1944, 58 F.Supp. 601, the license under the patent for spectacles provided that lenses could not be sold apart from temples but the licensee could buy the lenses from any one or make them itself. Royalty was based on the completed unit. The court stated:

"Whether the temples are within the patent claims of the rimless type is immaterial. If the temples are within the claims and the lenses are not, there is no illegality in the exaction by the plaintiff of royalties thereon. If the temples are not within the claim, i. e., if they merely describe the operation of the hinged means, there is still no illegality. Computation of royalties on this basis is to adopt a convenient unit of measurement. Total royalty payments are not increased, and no royalties are exacted on unpatented temples, if they are in fact unpatented. Royalties payable under a patent license agreement may be measured by the sales of the completed units contemplated to be manufactured under the patents involved whether or not such sales include items not embodied in the patent claims. Ohio Citizens Trust Co. v. Airway Electric Appliance Corporation, D.C., 56 F.Supp. 1010, 1012." 58 F.Supp. at page 606.

The instant case differs from Mercoid Corporation v. Mid-Continent Investment Co. and Philad Company v. Lechler Laboratories, Inc., supra, in that royalty here is not based solely upon the unpatented part of the whole. On the contrary, it covers the whole which of course includes unpatented parts.

Here again we are unable to say that there is any illegality about this arrangement. The language of the provisions alone or inferentially creates no design to extend patent monopoly or restrict competition. It seems that the arrangement is consistent with the convenience of the parties and the holding in the case of

American Optical Co. v. New Jersey Optical Co., supra, appears applicable.

Defendant's objection that the provisions of the agreement exacting a royalty to be paid upon patents of plaintiffs which have expired is without merit. No evidence of the dates of the expiration of such patents has as yet been produced. But even if this were so parties have been held to have legally agreed to pay royalties upon expired patents under certain circumstances. Pressed Steel Car Co. v. Union Pacific Ry., 2 Cir., 1920, 270 F. 518. Nor does this objection, taken together with the others raised by the defendant, at this stage of the proceedings herein compel the view that the whole contract forms a pattern or design to extend plaintiff's patent monopoly or suppress competition.

The grounds of defendant's objections are advanced prematurely. They are not sustained on the face of the complaint and the contract. Triable issues are raised. After the facts are developed on trial defendant may renew its objections if they are then cogent.

In the light of the preceding discussion it is unnecessary to pursue the plaintiff's extensive arguments that defendant's motion to dismiss lacked particularity, that it was, in effect, a substitute for an answer, that it attempted to set up the illegality of the contract which could only be pleaded affirmatively, and that it could not be granted except where it appeared that plaintiffs would not be entitled to relief under any state of facts which could be proved in support of the claim.

Following the argument of defendant's motion to dismiss the complaint there was also argued plaintiffs' motion for discovery and production of documents and papers under Rule 34, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Paragraph 5 of the contract provides that the payment of royalty shall be accompanied by a report setting forth the serial number of the machine sold which is so licensed, its date of sale and the sale price; and " * * * suitable books of account will be kept by Watson-Stillman of such transactions which shall be open to inspection by Hydraulic during reasonable business hours, an independent auditor or accountant to determine the accuracy of the reports and royalty payments. The auditor shall not be permitted to disclose confidential information which he might find in the books of account."

From the motion and affidavits submitted in connection therewith it appears that Peat, Marwich, Mitchell & Company submitted a report on October 18, 1945 to plaintiffs based upon its test examination of defendant's records. That report states that reports made by defendant to plaintiffs were based upon an arbitrary interpretation of "self contained" apparatus, and showed instances of failure to report. The accountant firm through its manager wrote defendant on October 16, 1945 as follows:

"May I take this opportunity to express my appreciation for the splendid cooperation extended to me by yourself, Mr. Sweeney and the entire staff during my visit to the Watson-Stillman Company".

In December 1945 another representative of the same accounting firm called at defendant's office to make an audit and requested permission to examine all pertinent records back to January 1, 1940, whereupon defendant advised the accounting firm on December 4, 1945 as follows:

"We consider this period of review to be beyond the legal requirements of our contract and inconsistent with the fact that our semi-annual statements during these years have been received, and cash payments have been accepted by the H. P. M. Company up to July 16, 1945. * * *

"We, therefore, cannot accede to any further examination of our books until the scope and time have been agreed to by our counsel."

On February 4, 1946, defendant's attorneys advised plaintiffs' attorneys that they believed the position expressed by their client in the letter of December 4, 1945 was well taken and added the following:

"However, without prejudice to that position if the question should ever arise, we are advising our client on receipt of written request and authority from H. P. M. to

914

make accessible to independent auditors or accountants the monthly sales books which record the data referred to in Paragraph 5 of the License Agreement."

The complaint herein was filed February 7, 1946, and the affidavit of defendant's president, filed February 25, 1946, contains the following statement:

"The defendant has proceeded in accordance with the Agreement. The existing sales records of the defendant that are material to the Agreement and are properly subject to an inspection by an independent auditor have been, and are, available for such inspection, but only subject to strict observance of the requirement of Paragraph 5 thereof. * * *"

Plaintiff moves for inspection of the following:

1. All sales invoices and debit memoranda.

2. Contract files relating to sales.

3. Customers files including description of machinery, engineering data and drawings.

4. Detailed records of royalty reports to The Hydraulic Press Manufacturing Company.

5. General Ledger.

In its supporting affidavits it is stated that affiants are informed that defendant would permit no further examination of its records pursuant to the contract, and that the records sought to be inspected are material in the preparation of its case.

Defendant in addition to showing its present willingness to permit an inspection pursuant to the contract contends that the inspection presently sought would force it to divulge confidential information which is the reason the contract provided that the inspecting auditor shall not be permitted to disclose confidential information which he might find in the books of account.

 From Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c there has evolved the frequent repeated legal holding that roving and fishing expeditions into an adversary's files will not be permitted. The parties herein have stipulated by contract in what

way documentary evidence establishing liability for royalty will be available to plaintiff. As the facts presently appear defendant has not breached its agreement in that respect. On the contrary, it is anxious to proceed with it. Therefore, it seems that this motion is premature, and that the matter should not be settled here until all avenues under the agreed method are exhausted by the plaintiffs in view of defendant's willingness still to comply with the contract.

Orders should be taken respectively denying defendant's motion to dismiss the complaint and plaintiffs' motion for production and inspection of documents.