**In re RECOMBINANT DNA TECH-
NOLOGY PATENT AND CON-
TRACT LITIGATION.**

**MDL No. 912.**
**Civ. Nos. IP–87–0219–C, IP–88–1463–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 2, 1994.

Robert C. Miller, Jean–Paul Lavalleye, John H. Weber, Oblon, Spivak, McClelland, Maier & Neustadt, Arlington, VA.

Gerald P. Dodson, Emily A. Evans, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, CA.

John Kidd, Nicholas Koch, Shea & Gould, New York City.

Hugh E. Reynolds, Jr., David T. Kasper, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC.

John W. Houghton, Jerry W. Hyland, Barnes & Thornburg, Indianapolis, IN.

Thomas D. Nevins, Broad, Schulz, Larson & Wineberg, San Francisco, CA.

Susan B. Tabler, Ice Miller Donadio & Ryan, Indianapolis, IN.

*Entry Granting Lilly's Motions for Leave to Amend, Denying Lilly's Motion for Summary Judgment as to Patent Unenforceability in IP–87–0219–C, and Denying Lilly's Motion for Summary Judgment for Unenforceability As to All Counts in IP–88–1463–C*

DILLIN, District Judge.

This cause comes before the Court on Lilly's motion for leave to amend its reply to Genentech's amended answer and counterclaim in IP–87–0219–C; Lilly's motion for leave to amend its answer and cross demands in IP–88–1463–C; Lilly's motion for summary judgment as to patent unenforceability in IP–87–0219–C; and Lilly's motion for summary judgment for unenforceability as to all counts in IP–88–1463–C.[1] For the following reasons, Lilly's motions for leave to amend are GRANTED, and Lilly's motions for summary judgment are DENIED.

*Background*

These actions are two of the six cases consolidated in this Court for pretrial proceedings by the Judicial Panel on Multidistrict Litigation. *See In re Recombinant DNA Technology Patent and Contract Litig.*, Docket No. 912 (J.P.M.L., Feb. 19, 1992), *aff'd, In re Regents of the Univ. of Cal.*, 964 F.2d 1128 (Fed.Cir.1992). The consolidated cases arise out of various research arrangements and license agreements among the Regents of the University of California (UC), Genentech, Inc. (Genentech), and Eli Lilly & Company (Lilly).

One of the actions currently before us, IP–87–0219–C, involves several patents poten-

---

1. The Court grants all the parties' motions for leave to file supplemental memorandums concerning the four motions currently before us. The supplemental materials, thus, have been considered for purposes of this Entry.

tially used in the production of human insulin and/or human growth hormone (hGH). Lilly initiated this cause of action on March 6, 1987, and amended its complaint on November 9, 1987. Lilly seeks a declaratory judgment that eight of Genentech's United States patents are invalid and not infringed. These patents are patent numbers 4,366,246; 4,601,980; 4,604,359; 4,634,677; 4,512,922; 4,518,526; 4,620,948; and 4,511,502. Genentech, in its counterclaims filed in IP–87–0219–C, alleges that Lilly willfully is infringing not only the patent numbers for which Lilly seeks the declaratory judgment, but also patent numbers 4,342,832; 4,425,437; 4,431,739; 4,704,362; and 4,898,830.

Two agreements involving these patents and other unpatented materials are relevant to the motions in this case. First, on August 25, 1978, Lilly and Genentech entered into the Lilly–Genentech Insulin Agreement (Insulin Agreement). Under the Insulin Agreement, Lilly acquired the right to use certain of Genentech's biological materials and knowhow "for the limited purpose of manufacturing, selling and using Recombinant Insulin without regard to Genentech Patent Rights ... Rights granted hereunder shall include the right to practice under any applicable Genentech Patent Right." Insulin Agreement, § 6.01, Lilly Ex. 2 at 19.

Second, on August 1, 1978, KabiGen AB (Kabi)[2] and Genentech entered into the Kabi–Genentech hGH Agreement (hGH Agreement). Under this agreement, Genentech granted Kabi the right to use certain of Genentech's biological materials and knowhow for the limited purpose of manufacturing, selling and using hGH for human purposes "without regard to Genentech Patent Rights." hGH Agreement, § 8.01, Lilly Ex. 13 at 18.

The second action before the Court is IP–88–1463–C, initiated by Genentech on November 6, 1987. Genentech amended its complaint on December 18, 1987, and the amended complaint alleges as causes of action willful infringement, breach of contract, fraud, unfair competition, theft of trade secrets, tortious interference with prospective business advantage, breach of fiduciary duty, unjust enrichment and conversion.

Lilly's defenses to Genentech's claims in IP–88–1463–C include estoppel, patent invalidity, patent unenforceability, statute of limitations and laches. Lilly also alleges in its defenses and cross demands that Genentech caused UC and UC researchers to breach certain agreements between UC and· Lilly; that Genentech intentionally interfered with Lilly's relationship with UC and UC researchers, and intentionally interfered with Lilly's prospective economic advantage arising from that relationship; that Genentech wrongfully misappropriated trade secrets; and that Genentech wrongfully converted Lilly's property.

On February 11, 1993, Lilly moved the Court for leave to amend its reply to Genentech's answer and counterclaim in IP–87–0219–C to raise a defense of patent misuse. On that same date, Lilly moved the Court for leave to amend its answer and cross demands in IP–88–1463–C to "clarify [that] its existing unclean hands defense includes a defense of patent misuse...." Lilly Mem. at 1. Lilly also sought permission to make a technical correction to its original reply in IP–88–1463–C to include in the prayer for relief an adjudication that Lilly has not converted Genentech's property.[3]

Finally, filed concurrently with Lilly's motions for leave to amend were Lilly's motion for summary judgment as to patent unenforceability in IP–87–0219–C and motion for summary judgment for unenforceability as to all counts in IP–88–1463–C. The summary judgment motions are based on the defense of patent misuse.

### Discussion

#### I. Lilly's Motions to Amend

 Lilly has moved the Court for leave to amend its pleadings both in IP–87–0219–C

---

**2.** Kabi is a Swedish corporation that manufacturers and sells human growth hormone under a patent license from Genentech.

**3.** Lilly's request to make this correction has not been countered by Genentech, and the amendment policy of Rule 15(a), Fed.R.Civ.P., is a liberal one, as discussed *infra* in the text. Thus, we grant Lilly's request for leave to amend its answer in IP–88–1463–C to include in the prayer for relief an adjudication that Lilly has not converted Genentech's property.

and in IP–88–1463–C. Genentech opposes such motions, arguing that delay, prejudice and futility militate against such amendment. Genentech notes that the instant actions were initiated in 1987, and contends that Lilly long ago should have asserted its patent misuse defense.

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading by leave of the court and that "... leave [to amend] shall be freely given when justice so requires...." The Seventh Circuit has stated that delay in presenting an amendment "... will be a sufficient basis for denial of leave to amend only when the delay has caused the opposing party undue prejudice." *Textor v. Board of Regents of N. Ill. Univ.,* 711 F.2d 1387 (7th Cir.1983). Thus, in deciding whether we should grant Lilly leave to amend, we must determine whether Lilly's delay in requesting leave to amend its pleadings has caused Genentech undue prejudice.

Moreover, we are mindful that other courts have found leniency of particular importance when considering whether to allow a party to amend the pleadings to raise issues of patent misuse and consequent unenforceability since " 'the possession and assertion of patent rights are 'issues of great moment to the public'.' " *Key Pharmaceuticals, Inc. v. Lowey,* 373 F.Supp. 1190, 1193 (S.D.N.Y.1974) (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 815, 65 S.Ct. 993, 998, 89 L.Ed. 1381 (1945) (quoting *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 246, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944))).

Genentech claims that undue prejudice would result if the Court permitted Lilly to assert the defense of patent misuse at this belated date.[4] That prejudice, Genentech contends, would arise through the addition of new factual and legal issues, necessitating additional discovery and potentially delaying final disposition of these consolidated cases.

An examination of the parties' opposing viewpoints leads us to the conclusion that Lilly's motions to amend should be granted. While permitting Lilly to add the defense of patent misuse may prompt additional discovery, we are not persuaded that such discovery will be unduly burdensome. This position is supported by the fact that discovery in these consolidated cases currently continues.

Genentech also argues that the proposed amendment would be unduly prejudicial because of the May 9, 1992, death of Dr. Bertil Aberg (Aberg). Aberg was a founder of Kabi and one of the key negotiators of the hGH Agreement. However, Genentech does not explain why the other key negotiators of the hGH Agreement would not be able to provide the testimony referenced by Genentech. Since it appears that other witnesses are available to supply testimony regarding the hGH Agreement, we do not believe that Aberg's absence would unduly prejudice Genentech.

■ We turn now to the issue of delay. Even if adding the patent misuse defense would delay final disposition—and we are not suggesting that it will—such delay must be balanced against the public's interest in assuring that a patentee does not extend his patent beyond the statutory monopoly he has been granted. *See Key Pharmaceuticals, Inc.,* 373 F.Supp. 1190. We are convinced that any potential delay in final disposition does not rise to the level of undue prejudice to Genentech, particularly in light of the public interest that must be safeguarded.

Finally, we cannot agree with Genentech that Lilly's proposed amendments are an exercise in futility. Rather, as we explain in the following section regarding Lilly's summary judgment motions, a factual determination is necessary to evaluate the viability of Lilly's patent misuse defense. Such a determination requires that both parties have sufficient time to gather and present the pertinent facts.

4. Genentech contends that patent misuse is an affirmative defense and that Lilly's failure earlier to plead this defense in IP–88–1463–C constitutes a waiver of the defense under Rule 8(c), Fed. R.Civ.P. The Seventh Circuit has stated that a waiver analysis "... involves the very same equitable calculus triggered by the assessment of undue delay under Rule 15(a)...." *Daugherity v. Traylor Bros.,* 970 F.2d 348, 352 n. 5 (7th Cir.1992). Thus, we address Genentech's claim of waiver as one of undue delay.

For all of these reasons, Lilly's motions to amend are granted.

## II. Lilly's Motions for Summary Judgment

A summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). While facts are viewed in the light most favorable to the nonmoving party, there is an affirmative burden of production on the nonmoving party to defeat a proper summary judgment motion. *Baucher v. Eastern Ind. Prod. Credit Ass'n*, 906 F.2d 332, 334 (7th Cir.1990) (following *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). Before the Court denies summary judgment, it must be determined whether there is sufficient evidence for a jury to find a verdict in favor of the nonmoving party. *Id.* (following *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)).

Lilly alleges that Genentech has included in the Insulin and hGH Agreements a provision that illegally restrains competition and impermissibly extends the statutory scope of Genentech's patent monopoly. Such inclusion constitutes *per se* patent misuse and unclean hands, Lilly argues, and renders Genentech's patents in issue unenforceable. Lilly insists that such misuse not only bars Genentech's infringement claims in IP–87–0219–C, but also bars cause number IP–88–1463–C, Genenetech's action based, *inter alia*, on Lilly's alleged breach of the Insulin Agreement.

On the other hand, Genentech contends that the agreements containing the provisions about which Lilly complains are primarily licenses of Genentech's materials and know-how, rather than patent licenses. Genentech asserts that the provisions merely reserve for Genentech the right to terminate the agreement if the licensee is warehousing the Genentech material and know-how obtained under the agreement.

Additionally, Lilly argues that the 1988 Patent Misuse Reform Act (alternatively, the Act) is inapplicable to its patent misuse defense. Conversely, Genentech contends that the Act should govern Lilly's recently added defense. We begin by addressing the issue of patent misuse.

"The grant to the inventor of the special privilege of a patent monopoly carries out a public policy adopted by the Constitution and laws of the United States, 'to promote the Progress of Science and useful Arts, by securing for limited Times to … Inventors the exclusive Right …' to their 'new and useful' inventions." *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 492, 62 S.Ct. 402, 405, 86 L.Ed. 363, 365–66 (1944) (quoting United States Constitution, Art. I, § 8, Cl. 8, 35 U.S.C.A. § 31). "But the public policy which includes inventions within the granted monopoly excludes from it all that is not embraced in the invention. It equally forbids the use of the patent to secure an exclusive right or limited monopoly not granted by the Patent Office and which it is contrary to public policy to grant." *Morton Salt Co.*, 314 U.S. 488, 492, 62 S.Ct. 402, 405, 86 L.Ed. 363, 366 (1942).

To ensure that the patentee does not prosper from an impermissible broadening of the "physical or temporal scope" of the patent grant, the courts long have recognized the doctrine of patent misuse as an affirmative defense to a suit for patent infringement. *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed.Cir.1986) (quoting *Blonder–Tongue Labs. Inc. v. University of Ill. Found.*, 402 U.S. 313, 343, 91 S.Ct. 1434, 1450, 28 L.Ed.2d 788 (1971)). Traditionally, some forms of inappropriate action have been deemed *per se* patent misuse. Thus, if a patentee has used his patent as leverage to fix resale prices, *see, e.g., Bauer & Cie. v. O'Donnell*, 229 U.S. 1, 33 S.Ct. 616, 57 L.Ed. 1041 (1913), or has tied another product to his patent (a practice referred to as a tying arrangement), *see, e.g., Morton Salt Co.*, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363, the patentee has been precluded as a matter of law from maintaining an infringement action, at least until the illegal restraint is removed.

In the past, courts have found *per se* patent misuse whenever the patentee conditioned the licensee's right to use his patent "on the licensee's agreement to purchase, use

or sell, or not to purchase use or sell, another article of commerce not within the scope of his patent monopoly." *Zenith Radio Corp. v. Hazeltine Research,* 395 U.S. 100, 136, 89 S.Ct. 1562, 1583, 23 L.Ed.2d 129, 155 (1969). For example, the Court in *Morton Salt* found *per se* patent misuse where the patentee permitted the licensee to use with the patented machines only salt tablets sold by the patentee. *Morton Salt,* 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363. And, the Court in *National Lockwasher v. George K. Garrett Co.* found *per se* patent misuse in a provision stipulating that the licensee would not manufacture any non-tangling spring washers except those covered by the licensor's patent. *National Lockwasher,* 137 F.2d 255 (3rd Cir. 1943).

Furthermore, agreements that implicitly rather than explicitly forbid the licensee from using the products or devices of a competitor also have been condemned. For example, in *United Shoe Mach. Corp. v. United States,* the lessor of patented shoe machinery included several restrictive provisions in his leases. 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708 (1922). Among these provisions was one stipulating "... that if the lessee fails to use exclusively machinery of certain kinds made by the lessor, the lessor shall have the right to cancel the right to use all such machinery so leased ..." *United Shoe,* 258 U.S. 451, 456, 42 S.Ct. 363, 365, 66 L.Ed. 708, 716–17. The Court held that although the agreement specifically did not prohibit lessees from using the machinery of a competitor or lessor, "... the practical effect of these drastic provisions is to prevent such use." *Id.* at 457, 42 S.Ct. at 365, 66 L.Ed. at 717. The Court determined that the restrictions and tying arrangements in the leases "must necessarily lessen competition and tend to monopoly...." *Id.* The Court found lessor's retention of a right to cancel as effective a method of tying as express covenants could be. *Id.* at 458, 42 S.Ct. at 365, 66 L.Ed. at 717.

Lilly argues that the holdings in *Morton Salt, United Shoe* and *National Lockwasher,* among others, illustrate that a finding of *per se* patent misuse is appropriate in this case. Lilly alleges that provisions in two license agreements entered by Genentech support

such a finding. The provision in the Insulin Agreement that Lilly challenges as patent misuse provides:

> 8.12 *Lilly Use Of Non–Genentech Recombinant Microorganism.* Genentech may, at its option, terminate Lilly's rights hereunder with respect to one or more countries or terminate this Agreement in is entirety in the event Lilly shall sell Recombinant Insulin which is produced or derived from the product of any Recombinant Microorganism for whose use no royalty is due to Genentech hereunder, unless Lilly is obliged by circumstances essentially beyond its control to make such Insulin sales involving such other Recombinant Microorganism, [sic] Lilly shall advise Genentech on each occasion on which it files for government approval for the sale of any such product and again on any such approval.

A similar provision in the hHG Agreement stipulates:

> 9.08 Genentech may, at its option, terminate KabiGen's rights hereunder with respect to one or more countries or terminate this Agreement in its entirety in the event KabiGen or an affiliate-licensee hereunder of KabiGen or AB Kabi shall sell for human purposes a product containing human growth hormone, an any analog thereof having substantially the same or improved efficacy, which is produced by or derived from the product of any microorganism or other non-pituitary source and for whose use no royalty is due to Genentech hereunder. KabiGen shall advise Genentech on each occasion on which it or the affiliate-licensee hereunder files for governmental approval for the sale of any such product and again upon the grant of any such approval.

Lilly's patent misuse charge focuses on Genentech's retention of a right to terminate the agreement should Lilly or Kabi sell recombinant insulin or hGH, respectively, produced or derived without using either Genentech microorganisms or Genentech patented technology. Lilly argues that this right to terminate presents a continual, inchoate threat. Specifically, if Lilly should use materials and services of others for the production

of human insulin or develop its own rather than use those of Genentech, Genentech can terminate Lilly's right both to Genentech's materials and patented technology. This threat, Lilly contends, counters the public interest by stifling both competition and innovation. Thus, Lilly argues, the provisions are Genentech's attempt by means other than that of free competition to extend the bounds of its lawful monopoly such that Lilly and Kabi are forced to use solely "... Genentech patented technology and/or Genentech materials in their production of insulin and hGH, respectively." Lilly Memo. at 3.

Were it not for the 1988 Patent Misuse Reform Act, we believe precedent would dictate a finding in Lilly's favor. Although the Insulin and hGH Agreements grant Lilly and Kabi, respectively, both unpatented materials and patented technology, we do not believe this sufficiently distinguishes the instant case from others in which *per se* patent misuse historically has been found. It is clear that Genentech's contractual right to terminate the agreements should the licensees sell recombinant insulin or hGH for which Genentech receives no royalty includes the right to cancel the patent license of the licensee. The retention of such a right appears to use the patent as leverage to insure that the licensee will not use the microorganisms and the technology of competitors. This type of tying arrangement previously has been condemned as *per se* patent misuse.

Moreover, the fact that the provisions are rights to terminate rather than explicit prohibitions on the licensees' use of competitors' products does not lessen their impact. As noted earlier in this Entry, the Supreme Court has found that such a tying method is as effective as an express covenant not to use competitor's products or technology. *See United Shoe,* 258 U.S. at 458, 42 S.Ct. at 365, 66 L.Ed. at 717.

However, the 1988 Patent Misuse Reform Act has placed limitations on the finding of patent misuse in tying arrangements. The Act eliminates *per se* findings of patent misuse in such situations. When the Act governs, a finding of patent misuse is prohibited unless the patentee is shown to have market power in the relevant market for the patent involved in the tying arrangement. The relevant part of the Act stipulates:

(d) No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following:

... (5) conditioned the license of any rights to the patent or the sale of the patented product on the acquisition of a license to rights in another patent or purchase of a separate product, unless, in view of the circumstances, the patent owner has market power in the relevant market for the patent or patented product on which the license or sale is conditioned.

35 U.S.C. § 271(d)(5).

Lilly argues that the Act is inapplicable to the instant actions for two reasons. First, Lilly argues that these causes were initiated before the Act's effective date. The Act specifically provides that 35 U.S.C. § 271(d)(5) applies only to cases filed on or after the date of its enactment—November 19, 1988. Second, Lilly contends that the Act does not govern the instant motions because the language of the Act does not include the type of tying arrangement here in issue. We address Lilly's concerns in turn.

The cases before us were initiated in 1987, both a number of months before the effective date of the Act. However, Lilly did not move for leave to amend in either case until February 11, 1993, years after the effective date of the Act. Genentech argues that Lilly's proposed amendment to include an affirmative defense of patent misuse does not relate back to the 1987 filing dates, but rather is governed by the 1993 filing date.

Federal Rule of Civil Procedure 15(c) provides the circumstances under which amendments relate back to the date of the original pleading. The applicable section reads:

(c) **Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when

776

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading....

Fed.R.Civ.P. 15(c)(2).

An examination of Lilly's original pleadings in IP–87–0219–C and IP–88–1463–C indicate that Lilly describes no "conduct, transaction or occurrence" from which its patent misuse defense could arise. In its original pleading in IP–87–0219–C, Lilly seeks a declaratory judgment that eight of Genentech's patents "... are invalid and void for failure to comply with the requirements of Part II of Title 35, United States Code." Compl. at 4.

Part II of Title 35 governs the patentability of inventions and the grant of patents. Even in interpreting Part II liberally in favor of Lilly, we do not believe that a charge of invalidity based on this part of Title 35 suggests conduct, a transaction or an occurrence from which an affirmative defense of patent misuse could arise. *See* 3 *Moore's Federal Practice* ¶ 15.15[3.—2].

Likewise in Lilly's answer and cross demands in IP–88–1463–C, we can find no facts set forth or attempted to be set forth from which a charge of patent misuse could arise. We do not believe that Lilly's defense of unclean hands can serve as notice to Genentech of a patent misuse defense. Lilly's reference to unclean hands does not suggest that Genentech misused its patents, but rather accuses Genentech of misrepresentation. Moreover, we find no other language in Lilly's original pleading that hints of patent misuse.

Consequently, we find that Lilly's amendments do not relate back to the filing date of its original pleadings, but rather are governed by the more recent filing date. Hence, relation back does not prevent the 1988 Patent Misuse Reform Act from controlling the motions under consideration.

Finally, Lilly argues that the tying arrangement involved in the instant action is not included within the language of the Act and, thus, the Act does not prevent a summary resolution of this motion. Conversely, Genentech argues that summary judgment is

improper because the language of the Act includes the tying arrangement presently under consideration.

This issue is a difficult one to resolve. The difficulty arises in interpreting the relevant section of the 1988 Patent Misuse Reform Act in light of the history of the doctrine of patent misuse. Through the years, courts have found *per se* patent misuse in varying forms of tying arrangements. In some cases, the patentee is conditioning the license of his patent on the licensee agreeing to use some specific unpatented product. *See, e.g., Morton Salt,* 314 U.S 488, 62 S.Ct. 402, 86 L.Ed. 363. In other cases, the patentee is conditioning the license of his patent on the licensee agreeing not to use the products or devices of a competitor. *See e.g., National Lockwasher,* 137 F.2d 255.

Courts have recognized that the two situations involve slightly different factual situations, but generally refer to both situations as tying arrangements. We cannot find an instance in which a court has indicated that the two tying arrangements should be treated differently. Some commentators, however, have referred to the former situations as "tie-ins" and the latter as "tie-outs." This is important to Lilly's argument in that Lilly insists that the above-quoted language of the Act refers only to "tie-in" arrangements. The tying arrangements challenged in the instant actions, Lilly contends, are "tie-outs" and, thus, unaffected by the Act.

This background leads us to the statutory interpretation problem. The relevant portion of the statute stipulates that a patentee who has "conditioned the license of any rights to the patent ... on the ... purchase of a separate product ..." is not "... guilty of misuse or illegal extension of the patent right ..." unless the patent owner has "... market power in the relevant market for the patent or patented product on which the ... license is conditioned." The question is whether this language encompasses only those arrangements in which the patent license directly is tied to the purchase of a separate product, or if it also encompasses those instances in which the terms of the license prevents the licensee from purchasing or using a separate product.

Lilly argues that because an earlier House version[5] of the 1988 Patent Misuse Reform Act included language that more precisely described the latter type of arrangements and the final version does not include that language, Congress did not intend to include both types in the Act. We, however, are not persuaded by Lilly's argument. We believe the statutory provision in issue reasonably could be read to encompass situations like the instant one, where the patentee has conditioned the license to the patent rights on the licensee's implicit agreement not to purchase certain, separate products. Because we believe that the statutory language is unclear, we turn to the legislative history for guidance.

An examination of the legislative history of the Act leads us to conclude that the language of the Act is meant to encompass both types of tying situations. For example, the Congressional Record of the Senate regarding the Act indicates that Congress' intention was to deal with "... a small piece of the patent misuse problem—tying arrangements—and leaves the rest for us to address in the future." 134 Cong.Rec. S17146–02 (daily ed. Oct. 21, 1988) (statement of Sen. Deconcini). Certainly, this passage does not suggest that some tying arrangements were not included in the statutory language. Moreover, the Congressional Record of the Senate reads: "Reform of patent misuse will ensure that the harsh misuse sanction of unenforceability is imposed only against those engaging in truly anticompetitive conduct." *Id.* (statement of Sen. Leahy). We are convinced that Congress would not have fashioned a "rule-of-reason type" approach for one form of tying arrangement and excluded from that approach another intimately related tying situation, especially in light of its clear purpose of permitting a misuse defense only when the patentee has acted anticompetitively. Contrary to Lilly's argument, we do not believe that Congress recognizes a difference between "tie-ins" and "tie-outs."

For these reasons, we find that 35 U.S.C. § 271(d)(5) is applicable to the instant motion, requires a rule of reason approach to the issue of Genentech's market power, and prevents summary resolution of this action. Furthermore, since Lilly's motion for summary judgment in IP–88–1463–C was contingent upon a finding of *per se* patent misuse, summary resolution in that case likewise is inappropriate.

### *III. Conclusion*

In summary, Lilly's motions for leave to amend are granted; Lilly's motion for summary judgment in IP–87–0219–C is denied; and Lilly's motion for summary judgment in IP–88–1463–C is denied.

---

5. H.R. 4086, 100th Cong., 2d Sess. (1988).