122 F.3d 1409
 19 ITRD 1451, 38 Fed.R.Serv.3d 592,
43 U.S.P.Q.2d 1722
 GENENTECH, INC., Appellant,
v.
The UNITED STATES INTERNATIONAL TRADE COMMISSION, Appellee,
and
Bio-Technology General Corporation and Bio-Technology
General (Israel) Ltd., Intervenors,
and
Novo Nordisk A/S, Novo Nordisk of North America, Inc., Novo
Nordisk Pharmaceuticals, Inc., and Zymogenetics,
Inc., Intervenors.
 No. 95-1244.
 United States Court of Appeals,
Federal Circuit.
 Aug. 14, 1997.
 
 D. Dennis Allegretti, Banner & Allegretti, Ltd., Boston, MA, argued, for appellant. With him on the brief was Frederick David Foster, Ablondi, Foster, Sobin & Davidow, P.C., Washington, DC. Of counsel were John P. Iwanicki and Dale A. Malone, Banner & Allegretti, Ltd., Boston, MA.
 Jean H. Jackson, Office of General Counsel, U.S. International Trade Commission, Washington, DC, argued, for appellee. With her on the brief were Lyn M. Schlitt, General Counsel, and James A. Toupin, Deputy General Counsel.
 Cecilia H. Gonzalez, Howrey & Simon, Washington, DC, argued, for intervenors Bio-Technology General Corporation, et al. With her on the brief were John P. White and Norman H. Zivin, Cooper & Dunham LLP, New York City.
 Albert L. Jacobs, Jr., Rosenman & Colin, New York City, argued, for intervenors Novo Nordisk, A/S, et al. On the brief was Mark H. Sparrow. Of counsel were Gerard F. Diebner, Kelly L. Morron, and Jesse D. Reingold. Also of counsel were Philippe M. Bruno, Munford Page Hall, II, L. Daniel Mullaney, Aldo Noto, Jon F. Tuttle, and Karen A. Zughaib, Dorsey & Whitney, Washington, DC.
 Before ARCHER, Chief Judge, and RICH and LOURIE, Circuit Judges.
 ARCHER, Chief Judge.
 
 
 1
 Genentech, Inc. (Genentech) appeals the final determination of the United States International Trade Commission (ITC or Commission), Genentech, Inc. v. United States Int'l Trade Comm'n, No. 337-TA-358 (Nov. 29, 1994) (Initial Determination), (Jan. 17, 1995) (Final Determination and Commission Opinion), dismissing Genentech's amended complaint alleging a violation of § 337 of the Tariff Act of 1930, 19 U.S.C. § 1337 (1994). The Commission dismissed the complaint as a sanction for discovery misconduct which it found had occurred when Genentech failed to disclose and produce certain documents to supplement discovery in the ITC proceeding until ordered to do so. We reverse and remand.
 
 BACKGROUND
 
 2
 On March 16, 1993, Genentech filed a complaint with the ITC seeking an investigation under § 337 based on the alleged infringement of four of its patents[1] relating to recombinant production of human growth hormone (hGH), by Bio-Technology General Corp. and Bio-Technology (Israel) Ltd. (collectively BTG) and Novo Nordisk A/S, Novo Nordisk of North America, Inc., Novo Nordisk Pharmaceuticals, Inc., and Zymogenetics (collectively Novo). On September 21, 1993, the ITC instituted Investigation No. 337-TA-358 to determine whether BTG and Novo were importing into or selling in the United States recombinantly produced hGH made abroad by processes covered by the claims of the four Genentech patents in violation of § 337.
 
 
 3
 The administrative law judge (ALJ) assigned to the case issued ground rules for the investigation. These rules included, inter alia, Ground Rules 4(ix) and 5(i), which provided in pertinent part:
 
 4. Discovery
 
 4
 * * * *
 
 
 5
 (ix) A duty to timely supplement all discovery responses upon obtaining information rendering a response substantially incomplete or incorrect is hereby imposed by the ALJ pursuant to Commission interim rule 210.30(d)(3).
 
 
 6
 * * * *
 
 5. Privileged Matter
 
 7
 (i) During the course of discovery, the following procedure, similar to what is set forth in Duplan v. Deering Millikin [sic] Inc., 397 F.Supp. 1146 (D.S.C.1975), should be followed with respect to those documents for which counsel claims attorney-client and/or work product privilege.
 
 
 8
 (a) When there is no objection to production of a document other than that the document is subject to a claim of privilege, each such withheld document should be separately identified in a privileged document list, by the party claiming the privilege, which privileged document list shall be provided to the requesting party within ten (10) calendar days following the due date of the response to the discovery request requesting production of the document so withheld.
 
 
 9
 * * * *
 
 
 10
 Commission Interim Rule (CIR) 210.30(d) also provides:
 
 
 11
 (2) A party is under a duty to seasonably amend a prior response if he obtains information upon the basis of which--
 
 
 12
 * * * *
 
 
 13
 (ii) He knows that the response, though correct when made, is no longer true, and the circumstances are such that a failure to amend the response is in substance a knowing concealment.
 
 
 14
 CIR 210.30(d)(2).
 
 
 15
 Discovery proceeded and, upon its completion on March 18, 1994, the ALJ conducted an evidentiary hearing April 11-24, 1994, with closing arguments and post-hearing briefs scheduled for June 9 and 10, 1994. Under Commission rules, the ALJ's initial determination was originally due by July 29, 1994.[2]
 
 
 16
 Meanwhile, during this same period, Genentech was involved in a consolidated "multi-district" patent infringement suit in the U.S. District Court for the Southern District of Indiana with two parties not involved in the ITC investigation, Eli Lilly & Co. and the Regents of the University of California. In that litigation, Genentech sued on fourteen patents, including the four patents at issue here. During the course of discovery in that action, Genentech inadvertently produced approximately 21,000 pages of documents bearing "GLP" Bates stamp numbers (the GLP documents), 12,000 pages of which Genentech considered privileged under either the attorney-client privilege or attorney work product privilege.[3] Genentech did not consider the remaining 9,000 pages to be privileged. Within two weeks of the production, Genentech realized its error and filed an emergency motion for the return of the 12,000 pages of documents. On March 22, 1994, the district court denied the motion because the disclosure resulted from inadequate screening procedures. The court ruled that Genentech had, therefore, waived any privilege as to those documents, although no waiver of the subject matter had occurred. In re Recombinant DNA Tech. Patent and Contract Litig., 850 F.Supp. 769 (S.D.Ind.1994).
 
 
 17
 Genentech did not inform the parties to the ITC investigation or the ALJ about the district court's ruling on the GLP documents. Instead, BTG learned of the court's ruling around July 8, 1994, after it was published. BTG, joined by Novo, promptly requested production of the GLP documents by Genentech. BTG and Novo claimed entitlement to the GLP documents due to Genentech's waiver of privilege in the district court litigation.
 
 
 18
 Genentech resisted disclosure in the ITC proceeding of 12,000 pages of the GLP documents it thought should be privileged. It argued that the interlocutory ruling of the district court only affected that proceeding and also that the protective order in that proceeding controlled access to these GLP documents. Because BTG and Novo were not parties to that action, Genentech contended that they were not entitled under the protective order to any of the documents. For these reasons, Genentech declined to produce voluntarily any of the 12,000 pages of GLP documents that it claimed were privileged.
 
 
 19
 As to the remaining 9,000 pages of GLP documents, Genentech confirmed that of the some 2900 pages that were relevant to the ITC investigation all except 60 had previously been produced. Genentech also believed these 60 pages had been produced but had not established that belief. In order to avoid delay, Genentech voluntarily produced these remaining pages.
 
 
 20
 On July 15, 1994, the ALJ ordered Genentech to produce the 12,000 pages of GLP documents, finding that "the documents in issue were found not to be privileged by the [district court] and therefore any privilege has been waived." Genentech promptly complied with the ALJ's order by producing the 12,000 pages to BTG and Novo on July 19, 1994.
 
 
 21
 On July 21, 1994, BTG and Novo moved to reopen the record to admit additional evidence relating to the GLP documents, to extend the date for the issuance of the initial decision, and for sanctions against Genentech. The ALJ denied the motion to reopen the record and the motion for sanctions, explaining that neither BTG nor Novo had identified the materiality of any of the GLP documents or any specific discovery request with which Genentech failed to comply. The ALJ, however, agreed to delay the issuance of the initial decision from July 29, 1994, until November 29, 1994, due to the "more complicated" nature of the case.
 
 
 22
 Subsequently, the ALJ reconsidered his ruling and permitted limited discovery pertaining to the GLP documents. On August 12, 1994, BTG and Novo filed a motion to compel Genentech to confirm whether certain of the GLP documents produced pursuant to the ALJ's order had been included on the "Duplan sheets."[4] Specifically, BTG requested that Genentech confirm that 59 of the GLP documents (408 pages) had been included, and Novo likewise requested the confirmation of 110 GLP documents (751 pages).
 
 
 23
 Four days later, Genentech informed the ALJ of the difficulty involved in making the confirmations with the documents previously listed on the Duplan sheets, noting that its task was akin to searching for "a small number of needles (about 12,000) in an enormous haystack (about 2 million)." The ALJ gave Genentech additional time to complete the discovery requests and allowed BTG and Novo until August 29, 1994, to renew their motions to reopen the record and to impose sanctions. On August 25, 1994, Genentech advised the ALJ that it needed additional time to make the confirmations. Specifically, Genentech stated that it had not been able to confirm whether 38 of the GLP documents had been disclosed on the Duplan sheets. Because of the impending deadline of August 29, 1994, for BTG and Novo to file their motions, the ALJ announced on August 26, 1994, that he would accept no further submissions from Genentech relating to the GLP documents. The effect of this decision apparently was that the 38 documents were deemed not to have been listed.
 
 
 24
 On August 29, 1994, BTG and Novo renewed their motions to reopen the record and for sanctions against Genentech for discovery misconduct with regard to the GLP documents. In response, Genentech consented to reopening the record and requested a hearing to review and rebut the allegations made by BTG and Novo. The ALJ made no rulings on these motions. Three months later, on November 29, 1994, the ALJ issued his initial decision.
 
 
 25
 In the initial decision, the ALJ held that BTG and Novo had violated § 337 by the importation and sale of recombinantly produced hGH made abroad by processes covered by the claims of three of the four Genentech patents. The ALJ, however, denied relief to Genentech due to "gross negligence on the part of Genentech ... in not identifying certain GLP documents on Duplan lists ... and in not commencing production of the GLP documents until ordered to do so by the ALJ." (Emphasis omitted.) The ALJ determined that this negligence resulted in the violation of CIR 210.30(d)(2), and Ground Rules 4(ix) and 5(i). For these reasons, as well as for the deterrent effect that a sanction would have on other parties before the ITC, the ALJ dismissed the complaint with prejudice pursuant to CIR 210.36(b).
 
 
 26
 All of the parties requested review of the initial decision by the Commission, but on January 17, 1995, the Commission denied review of the portion of the initial decision pertaining to the sanction. The Commission took no position with respect to the remainder of the initial decision.[5]
 
 DISCUSSION
 
 27
 * We review the final determination of the Commission in accordance with Chapter 7 of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-06 (1994). 19 U.S.C. § 1337(c) (1994); Fischer & Porter Co. v. United States Int'l Trade Comm'n, 831 F.2d 1574, 1576 (Fed.Cir.1987). We review a sanction imposed by the Commission under its rules for an abuse of discretion. See Gerritsen v. Shirai, 979 F.2d 1524, 1528 (Fed.Cir.1992) (reviewing a sanction imposed by the PTO for abuse of discretion); Refac Int'l, Ltd. v. Hitachi, Ltd., 921 F.2d 1247, 1254 (Fed.Cir.1990) (reviewing a sanction imposed by the district court for abuse of discretion). An abuse of discretion occurs if the Commission's sanction decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) follows from a record that contains no evidence on which the decision-making body could rationally base its decision. Abrutyn v. Giovanniello, 15 F.3d 1048, 1050-51 (Fed.Cir.1994); Heat and Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1022 (Fed.Cir.1986).
 
 
 28
 On appeal Genentech contends that the sanction of dismissal was an abuse of discretion based upon errors of law. First, Genentech argues that the ALJ erred in finding that the GLP documents were discoverable as a result of the waiver of privilege in the district court proceeding. If so, Genentech had no obligation to produce the documents. Second, Genentech argues that it was legal error and an abuse of discretion to dismiss the action without first granting a hearing on the materiality of the GLP documents, without finding that a specific order was violated, and without considering a lesser sanction.
 
 
 29
 The government, as well as BTG and Novo, counter that the ALJ acted within his discretion in dismissing Genentech's complaint because Genentech was grossly negligent in failing to observe the ALJ's Ground Rules. They further argue that due to Genentech's actions there was insufficient time to determine the precise impact of the GLP documents and that the ALJ reasonably concluded that BTG and Novo could only be adequately compensated through dismissal. On the question of waiver of privilege, they contend that Genentech cannot now collaterally challenge the district court's finding that the privilege had been waived because it failed to make that challenge in the proceeding before the ALJ. In any event, they argue that the ALJ correctly determined that the waiver was not limited to the district court litigation.
 
 II
 
 30
 We first consider the question of privilege. The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice. See American Standard Inc. v. Pfizer Inc., 828 F.2d 734, 745 (Fed.Cir.1987); see also Paul R. Rice, Attorney-Client Privilege in the United States § 2:1, at 2-45 (1993) (hereinafter "Rice, Attorney-Client Privilege "). "The work product privilege protects the attorney's thought processes and legal recommendations." Zenith Radio Corp. v. United States, 764 F.2d 1577, 1580, 3 Fed. Cir. (T) 169, 172 (Fed.Cir.1985).
 
 
 31
 Generally disclosure of confidential communications or attorney work product to a third party, such as an adversary in litigation, constitutes a waiver of privilege as to those items. See Carter v. Gibbs, 909 F.2d 1450, 1451 (Fed.Cir.1990) (in banc); Edna S. Epstein & Michael M. Martin, The Attorney-Client Privilege and the Work-Product Doctrine, 63 (2d ed.1988) (hereinafter "Epstein & Martin, Attorney-Client Privilege "); Rice, Attorney-Client Privilege § 9:21, at 9-43 to -44. Some courts, however, find an exception to the waiver of privilege when the disclosure is "inadvertent." See e.g., Alldread v. City of Grenada, 988 F.2d 1425, 1434 (5th Cir.1993); KL Group v. Case, Kay & Lynch, 829 F.2d 909, 919 (9th Cir.1987); see also In re Sealed Case, 877 F.2d 976, 980 (D.C.Cir.1989); Rice, Attorney-Client Privilege § 9:69 at 9-229 to -232. For instance, if a party has used reasonable effort to protect a confidence, courts may find a subsequent disclosure "inadvertent" and, thus, not a waiver of privilege. Rice, Attorney-Client Privilege § 9:69, at 9-229 to -231.
 
 
 32
 In this instance, the district court found that Genentech's allegedly inadvertent disclosure was a waiver of privilege because Genentech did not use adequate procedures to prevent disclosure. The ALJ gave full force to this ruling and held that the district court's finding applied in the ITC proceeding.
 
 
 33
 Genentech argues that the district court's ruling should not control the discovery proceedings before the ITC. Genentech first contends that the ALJ erred in giving preclusive effect to an unappealable interlocutory discovery ruling in another case without making independent findings as to whether privilege had been waived. Genentech relies in part on 19 U.S.C. § 1337(c) which provides that the ALJ must find facts and make conclusions of law based upon a proper evidentiary record.[6] Genentech next contends that the interlocutory district court ruling only held that Genentech had waived the privilege as to the GLP documents in that forum and that a waiver of privilege in one forum does not automatically waive privilege in others. Genentech also argues that the protective order entered into in the district court preserved the confidentiality of the documents as to other forums.
 
 
 34
 Genentech is correct that an interlocutory ruling that has not been subject to appeal normally cannot be given preclusive effect. See Hartley v. Mentor Corp., 869 F.2d 1469, 1472 (Fed.Cir.1989) ("[I]ssues which could not be appealed are never precluded."); Luben Indus., Inc. v. United States, 707 F.2d 1037, 1040 (9th Cir.1983) ("No issue preclusion attaches to the lost issue which could not by itself be appealed."); Yachts Am., Inc. v. United States, 230 Ct.Cl. 26, 673 F.2d 356, 362 (1982) ("Interlocutory conclusions, of course, do not constitute final dispositions and neither res judicata or collateral estoppel arise from them."). In this case, however, the record does not show that in the ITC proceeding Genentech actually challenged the factual basis of the ruling by the district court or its legal conclusion of waiver of privilege. Genentech did not contend that any of the facts found by the district court were incorrect or allege any additional facts which might require the ALJ to rule differently on the waiver issue. Instead, the record shows that Genentech contended only that the waiver of privilege found by the district court should be limited to that forum. This point is illustrated in Genentech's reply brief where it counters the argument that it failed to raise with the ALJ the correctness of the district court's order with the statement that it specifically informed the ALJ that the "order only affected that proceeding," and that "[i]t doesn't go beyond the [district court] litigation." This is not a challenge to the correctness of the district court's finding of waiver, but rather is a challenge to the application of that waiver in the ITC proceeding.
 
 
 35
 In his initial decision, the ALJ carefully considered the language of the district court's ruling to determine whether it should be treated as a general waiver of the privilege or should be limited to the district court proceeding. The ALJ's opinion shows that he read the court's ruling as a general waiver of privilege and decided that consistent with the weight of authority it should apply in other proceedings, including the ITC proceeding. While the district court's decision on waiver was interlocutory and the ALJ was required to make an independent analysis and decision on this issue, Genentech presented no evidence or argument that its disclosure of the GLP documents did not constitute a waiver of privilege or that the district's ruling was incorrect. Genentech has therefore failed to show that the ALJ's decision adopting the district court's ruling on waiver was erroneous.
 
 
 36
 We now turn to Genentech's contention that the waiver of privilege should be limited to the district court proceeding. Once the attorney-client privilege has been waived, the privilege is generally lost for all purposes and in all forums. Professor Rice explains the scope of a waiver of the attorney-client privilege as follows:
 
 
 37
 When the attorney-client privilege has been waived, whatever the subject matter of the waiver, the privilege is gone. The client, therefore, may no longer use the privilege to prevent access to the communications in question by either the party who successfully challenged the privilege claim or by anyone else in the present or future litigation. Having had the opportunity to assert and address the privilege claim in a judicial proceeding, the privilege holder is thereafter barred, under the doctrine of res judicata and collateral estoppel, from relitigating the resolved claim.
 
 
 38
 Rice, Attorney-Client Privilege § 9:85, at 9-295 (footnotes omitted); see 8 John H. Wigmore, Evidence in Trials at Common Law § 2328(1), at 639 (1961) ("[W]aiver at a first trial should suffice as a waiver for a later trial since there is no longer any reason for preserving secrecy."); see also Epstein & Martin, Attorney-Client Privilege at 76 ("Once an express or implicit waiver has occurred, the privilege is generally treated as relinquished for all purposes and in all circumstances thereafter.").
 
 
 39
 A small number of courts have recognized, in circumstances not present here, a limited waiver that enables the attorney-client privilege to survive certain breaches of confidentiality. See, e.g., Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 611 (8th Cir.1977) (finding that the surrender of privileged material to the SEC in an investigation pursuant to a subpoena was only a limited waiver of privilege); Transamerica Computer Co. v. International Business Machines Corp., 573 F.2d 646, 650-51 (9th Cir.1978) (finding an inadvertent production of a limited number of privileged documents was not a waiver of privilege because the production was "compelled" as a result of the extraordinary circumstances of the accelerated discovery proceedings); see generally Rice, Attorney-Client Privilege § 9:85, at 9-295. But see Permian Corp. v. United States, 665 F.2d 1214, 1220-21 (D.C.Cir.1981) (rejecting the limited waiver theory of Diversified Industries and holding privilege waived as to documents turned over to the SEC); In re Weiss, 596 F.2d 1185, 1186 (4th Cir.1979) (declining to extend limited waiver theory of Diversified Industries to grand jury proceedings following an SEC investigation). This court, however, has never recognized such a limited waiver. Moreover, Genentech has presented no compelling arguments as to why we should apply such a limited waiver theory in this case. Genentech's disclosure of the GLP documents in the district court litigation was not compelled but rather, as the district court found, was the result of inadequate screening procedures. This finding of the district court has not been disputed by Genentech.
 
 
 40
 Genentech alternatively argues that the waiver should be restricted to the district court litigation because the parties to that action were subject to protective orders. The pertinent protective order contained the following provision:
 
 
 41
 It is agreed that inadvertent production of documents or information subject to the attorney-client privilege or work product immunity (despite the parties' best efforts to screen such documents and information prior to its production) does not waive the attorney-client privilege or work product immunity if a request for return of such documents or information is made promptly after the Producing Party learns of its inadvertent production.[7] 
 
 
 42
 As discussed above, Genentech does not seek a finding that no waiver occurred. Instead, Genentech argues that the protective order necessarily limits the scope of any waiver of privilege and that by its nature the protective order requires that the waiver be limited to the forum. Genentech therefore contends that its inadvertent disclosure in the district court litigation waived privilege only for purposes of that forum.
 
 
 43
 By its terms, the district court's protective order does not impose any limitation on the scope of waiver. The provision in the protective order relied on by Genentech only deals with the question of whether an inadvertent disclosure will be ruled to be a waiver at all. The district court found that Genentech had inadequate screening procedures and had not used "best efforts" to maintain the confidentiality of the documents. As a result, the court held that Genentech's disclosure was not covered by the cited provision in the protective order.
 
 
 44
 Because the provision of the protective order relied on by Genentech did not limit in any way the effect of a waiver of privilege, but only dealt with whether an inadvertent disclosure would cause a waiver of privilege, we conclude that the ALJ did not err in finding Genentech's waiver of privilege in the district court was a general waiver that could be asserted in the ITC proceeding.
 
 III
 
 45
 We next consider the basis for the ALJ's and the Commission's sanction of dismissal. The Commission has authority to impose sanctions for abuse of discovery under the Tariff Act of 1930, as amended in 1988, as follows:
 
 
 46
 The Commission may by rule prescribe sanctions for abuse of discovery and abuse of process to the extent authorized by Rule 11 and Rule 37 of the Federal Rules of Civil Procedure.
 
 
 47
 19 U.S.C. § 1337(h) (1994). Pursuant to this statutory authority, the Commission promulgated CIR 210.36, which provides:
 
 
 48
 (b) Failure to comply with order compelling discovery. If a party or an officer of a party fails to comply with an order including, but not limited to, an order for the taking of a deposition or the production of documents, an order to answer interrogatories, an order issued pursuant to a request for admissions, or an order to comply with a subpoena, the administrative law judge, for the purpose of permitting resolution of relevant issues and disposition of the investigation without unnecessary delay despite the failure to comply, may take such action in regard thereto as is just.
 
 
 49
 19 C.F.R. § 210.36(b) (1994). CIR 210.36(b) then specifies non-exclusive action that the ALJ may take as a sanction, such as construing the evidence adversely to the offending party, taking certain matters as established, limiting the evidence the offending party may present, or rendering an initial decision against the offending party.[8] CIR 210.36(b)(1)-(5). The rule specifies, however, that the sanction should be such "as may be sufficient to compensate for the lack of withheld testimony, documents, or other evidence." CIR 210.36(b)(5).
 
 
 50
 CIR 210.36(b) is coextensive with Rule 37 of the Federal Rules of Civil Procedure which provides that "[i]f a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule [motion to compel] or rule 35 [physical or mental examination], ... the court in which the action is pending may make such orders in regard to the failure as are just." Fed. R. Civ. P . 37(b)(2). The ALJ acknowledged that the Commission intended CIR 210.36(b) to track Rule 37.[9] Authorities and principles for imposing sanctions under Rule 37 are therefore appropriately applied to this case.
 
 
 51
 The ALJ held that Genentech's gross negligence warranted the imposition of the most severe sanction available. According to the ALJ, the sanctionable conduct consisted of (1) violations of Ground Rule 4(ix) and CIR 210.30(d)(2) for failing to produce the GLP documents until ordered to do so and for failing to notify BTG and Novo about the issuance of the court's ruling in the district court litigation; and (2) a violation of Ground Rule 5(i) for failing to list certain GLP documents withheld from production on the basis of privilege on the Duplan sheets. Based on his characterization of these actions as a "[f]ailure to comply with order[s] compelling discovery" within the meaning of CIR 210.36(b), the ALJ, without hearing or other warning, sanctioned Genentech by dismissing the complaint and entering a finding of no violation of § 337. The Commission sustained the ALJ's action without comment.
 
 
 52
 We conclude that the ALJ abused his discretion by imposing this sanction because the ALJ's decision does not demonstrate that any discovery order was clearly violated, including Ground Rules 4(ix) and 5(i) and CIR 210.30(d). Moreover, the ALJ has not established that the specified rules are "orders compelling discovery" within the meaning of CIR 210.36(b) that would warrant the sanction here imposed.
 
 
 53
 * Ground Rule 4(ix) and CIR 210.30(d)(2) require the parties to supplement discovery responses. CIR 210.30(d)(2) imposes a "duty to seasonably amend a prior response if [a party] obtains information upon the basis of which ... [the party] knows that the response ... is no longer true, and the circumstances are such that a failure to amend the response is in substance a knowing concealment." (Emphasis added). Ground Rule 4(ix) likewise imposes a "duty to timely supplement all discovery responses upon obtaining information rendering a response substantially incomplete or incorrect." (Emphasis added). As a first ground for sanction, the ALJ stated that based on these rules Genentech had a duty to produce the GLP documents immediately upon receipt of the district court's ruling on the waiver question and to disclose immediately the fact that such a ruling had been issued. According to the ALJ, Genentech's failure to produce the documents until ordered to do so and Genentech's failure to inform the parties about the ruling amounted to gross negligence.
 
 
 54
 The findings and reasoning of the ALJ are insufficient to establish that the cited rules were violated or to sustain a finding of gross negligence. Genentech's duties under these rules only arise once it obtains information such that it knows a discovery response is substantially incomplete or incorrect or is no longer true. Indeed, CIR 210.30(d)(2) specifies that the circumstances must demonstrate a knowing concealment. The evidence relied on by the ALJ does not show that Genentech's responses were incomplete or incorrect or that Genentech knew they were incomplete, let alone that Genentech knowingly concealed information rendering a response incomplete or incorrect.
 
 
 55
 The ALJ cited Genentech's failure to produce the GLP documents until ordered to do so. Of the 21,000 pages of GLP documents, Genentech apparently had already produced the 9,000 pages for which no privilege was claimed.[10] As to the 12,000 pages of documents for which Genentech tried to claim privilege, Genentech's discovery responses could not be considered incomplete or incorrect under the terms of Ground Rule 4(ix) or CIR 210.30(d) if the documents were privileged or if Genentech was claiming in good faith that they were privileged. Thus, Genentech could not be in violation of these discovery orders until it knew that documents responsive to a discovery request were not privileged and had not been produced. Genentech did not know whether the privilege as to these documents had been waived for purposes of the ITC proceeding until the ALJ ruled against it.
 
 
 56
 In deciding that the ALJ did not err in finding that Genentech had waived privilege as to the GLP documents, see Section II supra, we did not decide that its arguments were frivolous and not pursued in good faith. Genentech contended before the ALJ and in its briefs on appeal that its waiver was limited to the district court litigation by the interlocutory nature of the district court's order and by the protective order entered into in that litigation. The ALJ summarily dismissed Genentech's arguments as "frivolous." We are not persuaded, however, that Genentech's unsuccessful arguments were frivolous.
 
 
 57
 In the first place, there is a minority view, albeit not followed in this court, that in certain circumstances the attorney-client privilege will survive a limited breach of confidentiality. See Diversified Indus., 572 F.2d at 611; Transamerica Computer, 573 F.2d at 650-51; see generally Rice, Attorney-Client Privilege § 9:85, at 9-295. In the second place, the interlocutory nature of the district court's order raised a nonfrivolous question of whether it should be given collateral estoppel effect in the ITC proceeding. We concluded that it could in this case because Genentech had not challenged adequately before the ALJ the factual or legal basis of the district court's waiver ruling. Thus, possible error on the part of the district court in its interlocutory finding of waiver was not presented to the ALJ for decision. We are also convinced that other nonfrivolous arguments were raised, such as the effect of the protective order in the district court litigation. The ALJ made no findings that Genentech pursued these arguments in bad faith. Moreover, BTG and Novo have not so contended.
 
 
 58
 There is also an absence of findings or evidence that Genentech had knowledge of the need to supplement discovery in the ITC proceeding because of the waiver ruling in the district court proceeding. We are unable, therefore, to discern the ALJ's basis for concluding that Genentech had a duty to produce the GLP documents prior to the time that he ruled against Genentech on the question of privilege. When this occurred, Genentech promptly complied with the ALJ's order.
 
 
 59
 The ALJ also cited Genentech's failure to disclose immediately the district court's ruling. However, disclosure of this ruling, vel non, was not the subject of any discovery request. The ALJ has not explained how this failure rendered any discovery response substantially incomplete or incorrect.[11]
 
 
 60
 Even assuming Genentech should have disclosed the district court's ruling to the parties in the ITC proceeding the record does not adequately establish that Genentech knew or should have known of its duty to do so, nor does it indicate that Genentech knowingly concealed the ruling. In concluding that Genentech had a duty to advise the parties in the ITC proceeding of the district court's ruling, the ALJ relied on the Seventh Circuit's statement regarding knowing concealment:
 
 
 61
 The strong term "knowing concealment" is designed, in recognition of the burden that a general duty of supplementation would impose in complex litigation, to protect a party who is reasonable in believing either that the change that has made his answer no longer accurate is known to his opponent or that it is a matter of no importance.
 
 
 62
 Fortino v. Quasar Co., 950 F.2d 389, 396 (7th Cir.1991). In relying on this statement, however, the ALJ presupposed that Genentech knew that an answer was no longer accurate. Because the ALJ has not shown this to be the case, this statement is actually supportive of Genentech's position.
 
 
 63
 Relying on the above definition, the ALJ inferred that Genentech knowingly concealed the district ruling based on two findings. The ALJ found that Genentech could not have reasonably believed that BTG and Novo would learn of the district court's ruling at the time of its issuance and that BTG and Novo did not in fact learn of the ruling until its publication nearly three months later. These findings, however, are not sufficient to support an inference of knowing concealment. They do not show that Genentech knew that its discovery responses might no longer be accurate. The ALJ's inference of concealment is also inconsistent with Genentech's belief, presumably held in good faith, that the ruling was limited to the district court litigation and was, therefore, not relevant to the ITC proceeding. Thus, we cannot say, based on this record, that Genentech knowingly failed to disclose the district court's ruling.
 
 
 64
 Furthermore, again assuming that Genentech had a duty to disclose the district court's ruling to the ITC, the ALJ has not made any findings as to when Genentech should have made the disclosure or when it should have known that it had a duty to disclose the district court's ruling. The ALJ apparently assumed that immediate disclosure was required. Any such disclosure obligation by Genentech, however, could not have arisen immediately. The discovery rules only require "timely" and "seasonably" updated responses. Considering the circumstances of this case, including the number of documents involved and the separateness of the two proceedings, Genentech necessarily would be entitled to some reasonable amount of time to consider how to proceed upon receipt of the interlocutory district court ruling.
 
 
 65
 Accordingly, we are convinced that Genentech's failure to produce the GLP documents until ordered to do so and Genentech's failure to disclose the district court's waiver ruling did not amount to a violation of Ground Rule 4(ix) or CIR 210.30(d). Moreover, based on the ALJ's findings and the record as a whole, we are unable to conclude that Genentech was grossly negligent in delaying production of the GLP documents pending the ALJ's ruling on waiver or in not immediately notifying the parties of the district court's ruling on waiver of privilege.
 
 B
 
 66
 Ground Rule 5(i) requires that all documents claimed to be privileged be listed on the Duplan sheets. As a second basis for sanctions, the ALJ cited Genentech's failure to identify certain documents on the Duplan sheets. The findings and reasoning of the ALJ, however, are again insufficient to establish that Genentech's failure to confirm the Duplan listing of 38 of the GLP documents amounts to gross negligence or a violation of Ground Rule 5(i).
 
 
 67
 The ALJ did not find, nor do we discern from the record, that any of the GLP documents were shown to be missing from the Duplan sheets. We only know that Genentech did not have sufficient time to ascertain whether or not a small number (38) of the GLP documents were listed. Genentech asserts without contradiction that during the course of the ITC proceeding it answered over 600 discovery requests, produced twenty-four witnesses for deposition, reviewed over three million pages of documents, identified and produced over 800,000 documents, and defended nine summary judgment motions. In addition, Genentech cataloged over 5,900 documents for the Duplan sheets. Despite this volume of discovery the ALJ refused, some three months before the statutory deadline for the initial decision, to grant Genentech any additional time to make the confirmations. He then found that Genentech's failure to confirm that the 38 documents at issue were among the 5,900 listed in the Duplan sheets, in and of itself, justified a finding that Genentech was grossly negligent and that Ground Rule 5(i) was violated. This amounts to an abuse of discretion.
 
 
 68
 Even accepting that 38 documents were absent from the Duplan sheets, the ALJ's finding of gross negligence is not supported. The ALJ did not inquire into Genentech's efforts and procedures for identifying and listing privileged documents. Further, the ALJ never considered the materiality of the documents.[12] Without such findings, it is not possible to ascertain whether an omission of a small number of documents from the Duplan sheets (if there was in fact such an omission) would cause Genentech to be in noncompliance with Ground Rule 5(i).
 
 
 69
 Thus, given the volume of discovery, the small number of documents involved, and the lack of any finding that the GLP documents were material, the ALJ's conclusion that Genentech's failure to confirm or make the Duplan listing for 38 document amounted to gross negligence and substantial non-compliance with a discovery order cannot be sustained.
 
 C
 
 70
 Before sanctions may be imposed, CIR 210.36(b) and Fed.R.Civ.P. 37 require a party to fail to comply with an "order" concerning discovery. The parties dispute whether this predicate "order" must be an "order to compel" or whether the outstanding discovery orders are sufficient.[13]
 
 
 71
 While we are hesitant to constrain the ITC to imposing sanctions only when an "order to compel" has been violated, our precedent is clear that before the sanction of dismissal may be imposed the offending party must have notice of the alleged discovery misconduct and be given an opportunity to comply. Ingalls Shipbuilding, Inc. v. United States, 857 F.2d 1448, 1455 (Fed.Cir.1988) (requiring a predicate "warning" order setting out the parties deficiencies before sanctions could be imposed). Indeed, we have stated that the sanction of dismissal is ordinarily only "applied in those cases where a party is explicitly ordered by the court to provide discovery but the party fails to respond in a proper or timely manner." Adkins v. United States, 816 F.2d 1580, 1582 (Fed.Cir.1987). "The litigants would then be on notice by court order of what was expected, and failure to comply would be sufficient basis for imposition of a sanction under [Rule] 37." Ingalls Shipbuilding, 857 F.2d at 1455; see also R.W. Int'l Corp. v. Welch Foods, Inc., 937 F.2d 11, 15 (1st Cir.1991) ("[W]hen a court issues a broad-form discovery order, and the party to whom it is addressed complies with it somewhat less than fully, withholding documents arguably outside the order's scope, the district court cannot dismiss without first entering an order commanding production of the specific materials."); Avionic Co. v. General Dynamics Corp., 957 F.2d 555, 558 (8th Cir.1992) (requiring a prior order so as to "give the party failing to comply with discovery adequate notice of what is required and 'an opportunity to contest the discovery sought prior to the imposition of sanctions.' " (quoting Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1213 (8th Cir.1981))); Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir.1991) (stating that Rule 37 requires as a predicate for sanctions "a clearly articulated order of the court requiring specified discovery"); United States v. One 1987 BMW 325, 985 F.2d 655, 660 (1st Cir.1993) (requiring a violation of a motion to compel before sanctions may be imposed under Rule 37).
 
 
 72
 In this case, the outstanding discovery rules did not put Genentech on specific notice that its conduct was deficient. When Genentech was ordered to produce the GLP documents, it immediately did so. Because the ALJ cites no other specific order with which Genentech did not comply, no basis exists for the dismissal of this action.
 
 CONCLUSION
 
 73
 Based on the foregoing and our review of the record, we conclude that the ALJ and the Commission abused their discretion in imposing the sanction of dismissal in this case. Although the Commission, and in turn, an ALJ has authority under the rules to impose sanctions for discovery abuse, the discretion to impose the sanction of dismissal "is not unfettered." Ingalls, 857 F.2d at 1451. A sanction of dismissal "is a harsh remedy, which should be reserved for only the most severe abuses of the discovery process." Hendler v. United States, 952 F.2d 1364, 1382 (Fed.Cir.1991); see also Dahl v. City of Huntington Beach, 84 F.3d 363, 366 (9th Cir.1996) (stating that dismissal " 'is so harsh a penalty it should be imposed as a sanction only in extreme circumstances' " (quoting Thompson v. Housing Auth. of Los Angeles, 782 F.2d 829, 831 (9th Cir.1986))); Savola v. Webster, 644 F.2d 743, 745-46 (8th Cir.1981); Mutual Fed. Sav. and Loan Ass'n. v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir.1989); Ehrenhaus v. Reynolds, 965 F.2d 916, 920-21 (10th Cir.1992); Barnhill v. United States, 11 F.3d 1360, 1367 (7th Cir.1993); Wouters v. Martin County Fla., 9 F.3d 924, 933 (11th Cir.1993); One 1987 BMW 325, 985 F.2d at 658; Federal Deposit Ins. Corp. v. Conner, 20 F.3d 1376, 1380 (5th Cir.1994); Marfia v. T.C. Ziraat Bankasi, 100 F.3d 243, 249 (2d Cir.1996); Freeland v. Amigo, 103 F.3d 1271, 1277 (6th Cir.1997). The ALJ has failed to make adequate findings or otherwise identify conduct so abusing the discovery process that the sanction of dismissal would be warranted.
 
 
 74
 Because dismissal is universally recognized as a sanction of last resort, courts are required, before imposing that sanction, to consider fully all the surrounding circumstances, such as the degree of culpability, the amount of prejudice, and the availability of less drastic sanctions. See, e.g., Freeland, 103 F.3d at 1277; Dahl, 84 F.3d at 366; Estate of Spear v. Commissioner of Internal Revenue Serv., 41 F.3d 103, 109 (3d Cir.1994); Mutual Fed., 872 F.2d at 92; Conner, 20 F.3d at 1380-81; Ehrenhaus, 965 F.2d at 921; Wouters, 9 F.3d at 934. Even if Genentech was guilty of discovery abuse, the Commission and the ALJ did not adequately consider all pertinent factors and make the specific findings necessary to justify the ultimate sanction of dismissal. As we have recognized, there is a the "strong policy favoring a trial on the merits and against depriving a party of his day in court." Ingalls Shipbuilding, 857 F.2d at 1452 (quoting Fox v. Studebaker Worthington, Inc., 516 F.2d 989, 990 (8th Cir.1975)).
 
 
 75
 REVERSED and REMANDED.
 
 
 
 [1]
 The patents at issue are U.S. Patent Nos. 4,366,246; 4,342,832; 4,601,980; and 5,221,619. We note that there have been two additional decisions of this court involving two of these patents. See Bio-Technology Gen. Corp. v. Genentech, Inc., 80 F.3d 1553 (Fed.Cir.1996); Novo Nordisk of N. Am. v. Genentech, Inc., 77 F.3d 1364 (Fed.Cir.1996)
 
 
 [2]
 CIR 210.53(a) requires that an ALJ issue an initial decision "within nine (9) months, or within fourteen (14) months in a more complicated case, of the date of publication in the Federal Register of the notice of investigation." Because the notice of investigation in this proceeding was published in the Federal Register on September 29, 1993, the initial decision was due July 29, 1994. The ALJ subsequently decided, however, that the investigation was "more complicated" and extended the time for initial decision by four months, to November 29, 1994
 
 
 [3]
 The parties make no attempt to distinguish these two privileges either doctrinally or on a document by document basis, nor do we
 
 
 [4]
 Ground Rule 5 required that, in responding to discovery requests, a party list documents that are withheld on the basis of privilege, a procedure that allows opposing parties to challenge the assertion of privilege. These lists are called "Duplan sheets," from Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146 (D.S.C.1974). Genentech previously had identified over 5,900 privileged documents in this manner during the ITC proceeding
 
 
 [5]
 The effect of the Commission's denial of review is that that portion of the initial decision as to which the Commission denied review becomes the determination of the Commission. 19 C.F.R. § 210.42 (1996). The remainder of the initial decision as to which the Commission took no position, does not become part of the final determination of the Commission. See Beloit Corp. v. Valmet OY, 742 F.2d 1421, 1422 (Fed.Cir.1984)
 
 
 [6]
 19 U.S.C. § 1337(c) provides:
 The Commission shall determine, with respect to each investigation conducted by it under this section, whether or not there is a violation of this section,.... Each determination ... shall be made on the record after notice and opportunity for a hearing in conformity with the provisions of subchapter II of chapter 5 of Title 5.
 
 
 [7]
 The protective orders in the district court litigation were not a part of the ITC record. On appeal, Genentech has cited these orders for the above arguments. However, Novo has moved the court to strike these orders from the appellate record. Novo alternatively requests that, if the orders are allowed to be filed, we compel Genentech to produce other documents related to the issue of privilege and waiver. As a matter of judicial notice, we recognize the district court's protective orders and deny the motion to strike. See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989) (" '[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.' " (quoting 21 Charles A. Wright & Kenneth W. Graham Jr., Federal Practice & Procedure § 5106, at 505 (1977))). Because we reject Genentech's contention of a limited waiver of privilege, Novo's request to compel is denied
 
 
 [8]
 While not expressly provided for, the ALJ considered this rule to allow him to dismiss the complaint
 
 
 [9]
 The only difference between CIR 210.36 and Rule 37, as construed by the Commission, is that CIR 210.36 does not provide authority to award reasonable expenses and attorney fees as a sanction for cases instituted before August 31, 1994. This authority may be found in the Commission's Final Rule 210.33(c), which applies to § 337 investigations instituted after August 31, 1994
 
 
 [10]
 While there is a question as to whether 60 of these 9,000 pages had previously been produced, Genentech stated that it believed they had. In any event, Genentech produced the 60 pages, and the parties and the ALJ do not rely on the possible omission of the 60 pages as a basis for the sanction
 
 
 [11]
 The ALJ first denied BTG's and Novo's motion for sanctions because they had failed to identify any specific discovery request with which Genentech failed to comply. Interestingly, in his initial decision, the ALJ similarly fails to identify any specific discovery request with which Genentech failed to comply. Instead, he makes the conclusory statement that "[i]t is known that GLP documents responsive to respondents' discovery requests were not produced by Genentech during the discovery period" without pointing to any evidence to support this finding
 
 
 [12]
 The ALJ only generally recognized that the GLP documents "might be very material to issues in the investigation." (Emphasis added.) Indeed, the most definite statement on materiality in the initial decision is that the "GLP documents may have led respondents to the discovery of additional evidence supportive of their claims." (Emphasis added.) It is interesting to note that the GLP documents apparently had no effect upon the ALJ's ability to issue an alternative ruling that Genentech's patents were not invalid and were infringed. Although these questions are not before us, as they were not adopted by the Commission, we have not been advised by the initial decision or the parties' briefs that any specific GLP documents could have assisted BTG or Novo in defending the § 337 action, which is at least indicative that any discovery abuse was harmless
 
 
 [13]
 In an earlier ruling on the parties' motion for sanctions, the ALJ took the position that a violation of an order to compel was required. Specifically, he stated "Commission Interim Rule 210.36(b) requires that an order compelling the responding party to comply with discovery be entered, and that the responding [party] then fail to comply with said order, before sanctions are appropriate." However, in the initial decision the ALJ rejected this approach and characterized this position as "without merit." Genentech now asserts that the prior ruling was "law of the case." We disagree. The ALJ has the power to reconsider a prior decision in the same proceeding. See Exxon Corp. v. United States, 931 F.2d 874, 877 (Fed.Cir.1991)