**TEXAS INSTRUMENTS, INC., Plaintiff,**

v.

**HYUNDAI ELECTRONICS INDUSTRIES, CO. LTD., Hyundai Electronics America, Inc., and Hyundai Semiconductor America, Inc., Defendants.**

No. 2:98CV74 (TH).

United States District Court,
E.D. Texas,
Marshall Division.

March 5, 1999.

Kenneth Robert Adamo, Jones Day Reavis & Pogue, Jay Carl Johnson, Texas Instruments Incorporated, Dallas, TX, Carl R. Roth, Law Office of Carl R. Roth, Marshall,

ject to discovery.

TX, Jack William Campbell, IV, Gregory A. Castanias, Jones Day Reavis & Pogue, Washington, DC, Barry Satine, Jones Day Reavis & Pogue, New York City, Michael Covino, Jones Day Reavis & Pogue, New York City, for Texas Instruments Incorporated, plaintiff.

Thomas John Ward, Brown McCarroll & Oaks Hartline, Longview, TX, David J. Beck, Beck Redden & Secrest LLP, Houston, TX, Danny Lloyd Williams, Williams Morgan & Amerson PC, Houston, TX, Kenneth L Nissly, Thelen Reid & Priest LLP, San Jose, CA, for Hyundai Electronics Industries Co Ltd, defendant.

Elizabeth Ellen Mack, Locke Liddell & Sapp, Dallas, TX, Anthony de Alcuaz, Howard Rice Nemerowski Canady, Palo Alto, CA, for Nikon Precision Inc, movant.

Roderick M Thompson, Pillsbury Madison & Sutro, San Francisco, CA, for DNS Electronics LLC, movant.

## ORDER GRANTING LEAVE TO AMEND ANSWER AND HOLDING IN ABEYANCE MOTION FOR ENTRY OF FINAL JUDGMENT

HEARTFIELD, District Judge.

Before this Court is Defendant *Hyundai's Motion for Leave to Amend its Answer* [250] in Civil Action No. 2:98–cv–74 and *Defendants' Motion for Entry of Final Judgment Pursuant to Rule 54(b)* [99] in Civil Action No. 2:98–cv–73. Having considered the motions, the responses, and the arguments by counsel delivered at the March 4, 1999 hearing, this Court GRANTS Defendant *Hyundai's Motion for Leave to Amend its Answer* [250] in Civil Action No. 2:98–cv–74 and HOLDS IN ABEYANCE *Defendants' Motion for Entry of Final Judgment Pursuant to Rule 54(b)* [99] in Civil Action No. 2:98–cv–73.

### 1. Facts

As stated in a previous order,[1] this particular patent infringement lawsuit represents merely the tip of the litigation iceberg between Texas Instruments and Hyundai. In this particular lawsuit Texas Instruments is suing Hyundai for the alleged infringement of two of its semiconductor patents. Why?

On April 26, 1993, Texas Instruments and Hyundai entered into a fifty-five-page cross-license agreement (the "License Agreement"). In this License Agreement, Texas Instruments licensed Hyundai to globally use Texas Instruments' patents in exchange for royalties paid by Hyundai to Texas Instruments. However, the License Agreement contained a "sales cap" provision which, if reached, would terminate the License Agreement. This sales cap provision provided that if Hyundai's sales of "royalty bearing products" exceeded three billion eight hundred ninety-five million one-hundred thousand dollars ($3,895,100,000.00), then the License Agreement would terminate. Texas Instruments and Hyundai fell into disagreement over the interpretation of this sales cap provision—specifically, they disagreed over which products were "royalty bearing products" applicable to the sales cap calculation. Texas Instruments believed that some time before May 1, 1998, Hyundai's sales of "royalty bearing products" had reached the sales cap amount, thereby terminating the License Agreement. Hyundai disagreed. Hyundai interpreted its sales of "royalty bearing products" a tad differently than Texas Instruments—a "tad" being roughly nine-hundred million dollars ($900,000,000.00) below the sales cap amount of three billion eight hundred ninety-five million one-hundred thousand dollars ($3,895,100,000.00). Both parties entered into negotiations in an effort to resolve their differences, but to no avail. On May 1, 1998, the last "standstill" agreement to negotiations expired. Talks had failed.

On May 1, 1998 Texas Instruments filed several patent infringement lawsuits against Hyundai in this Court and in the Eastern District of Virginia. Hyundai, disagreeing with Texas Instruments' interpretation of the License Agreement, filed a declaratory judgment action in a New York district court; Hyundai sought a ruling that the License Agreement had in fact not terminated pursu-

---

1. Indeed, the first portion of these facts is taken directly from this Court's *Order Denying Motion* *to Stay Action Pending Appeal* [243]. All hail the cut and paste toolbar.

ant to the sales cap provision and, thus, it was still licensed to use Texas Instruments' patents. The parties' patent infringement litigation proliferated globally. As for the parties' patent infringement lawsuits in the United States resulting from the License Agreement dispute, this Court eventually collected all of the parties' American cases as the other United States cases or parts thereof began to trickle, and then flow, into this Court. This Court currently has seven lawsuits pending between Texas Instruments and Hyundai—Civil Action Nos. 2:98–cv–73, 2:98–cv–74, 2:98–cv–77, 2:98–cv–223, 2:98–cv–224, 2:99–cv–225, 2:99–cv–1. But this was a global license; as such, it spawned a global dispute. Currently, Texas Instruments and Hyundai are engaged in litigation related to the License Agreement in the following overseas locations: London, England; The Hague, Netherlands; Paris, France; Duesseldorf, Germany; Tokyo, Japan; and (just recently) Korea.[2]

This Court set this particular case (Case No. 2:98–cv–74) for trial on March 8, 1999. However, the license issue remained unresolved. If Hyundai's interpretation of the License Agreement was correct, then it was still licensed to use Texas Instruments' patents and it, in fact, was not "infringing" Texas Instruments' patents.[3] If, on the other hand, Texas Instruments' interpretation of the License Agreement was correct, then Hyundai was in fact not licensed to use Texas Instruments' patents and, consequently, all of these infringement cases should move full steam ahead (iceberg be damned). As the trial date for this case neared, this Court decided to undertake an analysis of the par-

ties' License Agreement. In fact, it stated its reasons for doing so: "[W]ith the trial of Texas Instruments' first patent infringement case nearing, the time has come for this Court to rule on the license issue." *Memorandum and Opinion Order* [195] 13. It did not assume this task lightly without considering the import of its decision: "This Court remains ever mindful of the implications its decision may have on the foreign litigation and will endeavor to perform an adequate analysis of the license issue." *Id.* Indeed, this Court entertained extensive briefing: cross motions for summary judgment, replies to the cross motions for summary judgment, and sur-replies to the cross motions for summary judgment. Moreover, this Court held a hearing in Marshall, Texas solely for the parties' presentation of their arguments on the license issue. Suffice it to say that this Court literally immersed itself in the fifty-five page License Agreement, New York contract law, the parties' briefs, and the arguments of counsel presented at the hearing in Marshall, Texas. On February 4, 1999, this Court entered its *Memorandum and Opinion Order* [195] wherein it adopted Texas Instruments' interpretation of the License Agreement; it rejected Hyundai's interpretation of that same agreement.

Hyundai argues that by adopting Texas Instruments' interpretation of the License Agreement on February 4, 1999, this Court "joined" a new issue: "patent misuse."[4] Hyundai seeks leave to amend its answer in six of the seven cases currently pending in this Court: 2:98–cv–73, *2:98–cv–74,*[5] 2:98–cv–77, 2:98–cv–223, 2:98–cv–224, and 2:98–cv–

---

2. This list is by no means exhaustive.

3. There is a complicated (albeit arguably moot) twist here. If Hyundai's interpretation of the License Agreement were correct, then there would still remain a "fact issue" precluding summary judgment. In its barest of bones, that fact issue would be an examination of which patents in certain countries qualified certain products as "royalty bearing products" applicable to the sales cap calculation under Hyundai's (unique) "TI Country Concept" interpretation of the parties' License Agreement.

4. Patent misuse? Apparently, the patent misuse doctrine protects competition by limiting patents

to their lawful scope, thereby fostering open competition through new or old technologies outside the scope of the patents. Specifically, Hyundai argues that Texas Instruments imposed a "tie-out" on Hyundai. To establish a tie-out, Hyundai must show that: (1) two separate items are involved in the tying arrangement; (2) the tied item is capable of substantial non-infringing use; and (3) the two items actually are tied.

5. Hyundai proposes a clever option for amending its answer in this case set for trial only six days from the date it filed this motion to amend. Hyundai suggests this Court separate the equitable defense of patent misuse for a subsequent bench trial.

225.[6] How did this Court "join" patent misuse to these lawsuits? In its *Memorandum and Opinion Order* [195] issued February 4, 1999, this Court adopted Texas Instruments' interpretation of the License Agreement and held that "royalty bearing products" consisted of all of Hyundai's worldwide sales of certain types of products (semiconductive elements and apparatus)—regardless of whether the particular sale involved a product Hyundai made, used, and sold completely outside the scope of Texas Instruments' patents. Hyundai says that this interpretation necessarily includes as "royalty bearing products" those products Hyundai sold that are *outside the scope* of Texas Instruments' patents. Texas Instruments, therefore, conditioned the continuation of the License Agreement (and, consequently, Hyundai's license) on Hyundai's refraining from selling products outside the scope of any of Texas Instruments' patents. Hyundai argues that this interpretation renders the License Agreement a tying device which, combined with Texas Instruments' market power in relevant markets for the tying items, constitutes *per se* misuse—patent misuse.

## 2. Law

■ Federal Rule of Civil Procedure 15(a) reads, in part: " . . . [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires.*" (emphasis added). The Supreme Court admonished:

> this mandate is to be heeded . . . In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—*the leave sought should, as the rules require "be freely given."*

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Indeed, in the same case, the Supreme Court further

stated that an "outright refusal to grant the leave [to amend] without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of discretion and inconsistent with the spirit of the Federal Rules." *Id.* So what are the prongs that prick this Court in its analysis of whether to grant Hyundai leave to amend its answer to include its patent misuse defense? The Fifth Circuit follows the mandate of *Foman:*

> "A decision to grant leave is within the discretion of the court, although if the court lacks a substantial reason to deny leave, its discretion is not broad enough to permit denial." *In exercising its discretion a court may consider undue delay, bad faith, dilatory motive, prejudice to the other party, and the futility of the proposed amendment.*

*Rolf v. City of San Antonio*, 77 F.3d 823 (5th Cir.1996) (quoting *State of Louisiana v. Litton Mortgage Co.*, 50 F.3d 1298, 1302–03 (5th Cir.1995) (internal citations and quotations omitted)). Indeed, "[r]ule 15(a) evinces a bias in favor of granting leave to amend." *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir.1982) *cert. denied* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *see Farias v. Bexar County Bd. of Trustees*, 925 F.2d 866, 874 (5th Cir.1991) (" 'Unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial' " (quoted source omitted)).

## 3. Analysis

First, only minimal prejudice will occasion Texas Instruments by allowing Hyundai to amend its answer in Civil Action No. 2:98–cv–74; and virtually none will occasion Texas Instruments by allowing Hyundai to amend its answer in the remaining five cases. Although trial of Civil Action No. 2:98–cv–74 is only a couple days away, Hyundai offers a clever solution: bifurcate the equitable defense of patent misuse for a subsequent

---

**6.** In the most recently filed case, 2:99–cv–1, Hyundai informs this Court that it "has the right to amend its Answer in that case and is doing

so." *Hyundai's Memorandum in Support of Its Motion for Leave to Amend its Answer ("Hyundai's Memorandum")* 1.

bench trial.[7] Nevertheless, counsel for Texas Instruments voiced concern over the prejudicial effect of bifurcation: "Prejudice number one, Your Honor, that would leave an injunction hanging in the air. There would be damages hanging in the air until this bifurcated trial." *Transcript of March 4, 1999 Hearing*, p. 26, lines 14–17. This Court adopts Hyundai's suggestion for Civil Action No. 2:98–cv–74 insofar as the bifurcation is concerned (It will later re-visit whether Texas Instruments is entitled to a jury trial after further briefing from the parties).[8] As for the remaining five cases, there simply will be no undue prejudice or delay in permitting Hyundai to amend its answer since those case are literally months away (and, thus, discovery is still underway).

While Hyundai has successfully skirted prejudice and delay with its procedural two-step in the 2:98–cv–74 case, it trips over its own feet with respect to the bad faith and dilatory motive prongs. Hyundai filed its *Motion for Leave to Amend its Answer* [250] MERELY SIX (6) DAYS BEFORE TRIAL in the 2:98–cv–74 case. Hyundai's excuse? "The issue first became joined when the Court issued its Order one month ago, on February 4, 1999, holding that the sales cap would be interpreted as TI contended." *Motion for Leave to Amend its Answer* [250] 15. Thus, argues Hyundai, it could not plead the defense of patent misuse.

The License Agreement relating to this lawsuit *was entered into April 26, 1993* — almost six (6) years ago. Since this Court had to rule on the parties' License Agreement, it had to become intimately familiar with all of the issues surrounding that agreement. Dispute over the proper interpretation of the License Agreement began in March of 1997—over two years ago. From this very beginning—March of 1997—Texas Instruments urged upon Hyundai the VERY SAME interpretation of the License Agreement this Court later adopted in its *Memorandum and Opinion Order* [195] delivered February 4, 1999. Texas Instruments never altered this interpretation. TEXAS INSTRUMENTS' TWO–YEAR OLD INTERPRETATION IS PRECISELY THE SAME INTERPRETATION THIS COURT ADOPTED IN ITS FEBRUARY 4, 1999 ORDER. No twists, no modifications—the same interpretation.[9]

In fact, on December 15, 1998, this Court received *Hyundai's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment* [67]. In footnote nine, Hyundai stated: "... TI's argument that the term of the license to Hyundai was conditioned on the level of Hyundai's sales of products covered by its own patents would also run afoul of *the doctrine against patent misuse*." *Hyundai's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment* [67] 23 (emphasis added). Hyundai knew about this defense almost a full three (3) months ago. Despite this, Hyundai waited until March 2, 1999 to amend its answer to counter Texas Instruments' patent infringement lawsuits with this patent misuse defense. Moreover, Hyundai

---

7. Hyundai argues that Texas Instruments has no right to jury trial on the equitable defense of patent misuse; thus, Hyundai seeks a bench trial on its patent misuse defense in Civil Action No. 2:98–cv–74. "It is well established that the right to trial by jury does not extend matters historically cognizable in equity." *Alcatel USA v. DGI Technologies*, 166 F.3d 772 (5th Cir.1999). However, at the March 4, 1999 hearing, Texas Instruments argued that fact issues exist which mandate a trial by jury on the patent misuse defense. This Court notes that Texas Instruments has not had the opportunity to respond in writing to *Hyundai's Motion for Leave to Amend its Answer* [250]. This Court will not deny a party the opportunity for trial by jury without first hearing from that party. Thus, this Court orders both parties to provide briefing on this issue *at a later date*.

8. Let this Court be crystal clear on one thing: this is yet another one of Hyundai's patented delay tactics (no pun intended). Now, conclusion of trial in Civil Action No. 2:98–cv–74 is delayed until completion of the subsequent trial on patent misuse. However, if the subsequent trial is indeed a bench trial, this Court hereby puts both parties on notice that it will conduct that bench trial *as soon as physically possible* after conclusion of the jury trial (which begins three days from now). The parties can just hang onto any motions for continuance they might intend on filing—this Court won't be needing them.

9. This Court did, however, refuse to adopt Texas Instruments' interpretation of New York contract law.

waited until SIX (6) DAYS BEFORE TRIAL in the 2:98–cv–74 case.

At yesterday's hearing, the Court queried Hyundai about *when* it first learned of the defense of patent misuse: "When did the defense of tie-out come up for the first time in the Hyundai camp?" *Transcript of Hearing on March 4, 1999*, p. 29, lines 15–17. Counsel for Hyundai indicated it became aware of the defense of patent misuse "sometime after you [the Court] allowed us to amend our complaint on November 20th [1998]." *Id.*, p. 30, lines 1–2. Hyundai tells this Court it had no idea about the patent misuse defense until, at the very latest, early December. What? Hyundai, like Texas Instruments, has assembled a litigation team full of top attorneys from across this nation—California patent attorneys, New York contract law attorneys, Texas trial attorneys, and so on. Hyundai now wants this Court to believe that out of the entire Hyundai litigation "camp" (full of campers with merit badges in patent law), *no one knew about this patent misuse defense* until just a few months ago. Now that's a load of Jell–O this Court refuses to swallow. Even assuming this is true, Hyundai, well-versed in the Fifth Circuit's liberal stance toward allowing amendments to pleadings, waited until the eve of trial to amend its answers despite being in a position to amend.

But wait, says Hyundai: the patent misuse defense did not come to fruition until this Court's *Memorandum and Opinion Order* [195] delivered on February 4, 1999. Assuming this assertion is true, that is, assuming Hyundai could not have plead the patent misuse defense until this Court actually spelled it out for Hyundai on February 4, 1999, that is still over a month ago.[10] Rather than move at that point to amend its answers, Hyundai waited until both parties (and this Court) were knee-deep in trial preparations for the 2:98–cv–74 case before moving to amend its answers. Rather than

diligently move to amend its answers after February 4, 1999, Hyundai sat on its hands for a month. Then, Hyundai tactically filed its motion to amend its answers SIX (6) DAYS BEFORE TRIAL in the 2:98–cv–74 case. Hyundai's clever procedural two-step in the 2:98–cv–74 case does take some sting out of the delay; but it does little to negate the fact that it made a tactical decision to rely upon the Fifth Circuit's liberal stance on amending pleadings to spring a motion on Texas Instruments on the eve of trial. Even assuming that some of the top patent attorneys in the nation could not anticipate and plead the defense of patent misuse until this Court ("a remote Court in the Eastern District of Texas with a visiting judge some 200 miles away") sent a flare up in the form of its *Memorandum and Opinion Order* [195] telling them to plead it, Hyundai still made the tactical decision to delay a full month before filing its motion to amend its answers. Tactical delay—Hyundai's *raison d'etre*.

■ Well, Hyundai wins this one. Following the mandate of the Supreme Court and the Fifth Circuit, this Court must allow Hyundai to amend its answers. Moreover, this Court notes it:

> should be particularly lenient in allowing amendment of the pleadings to raise issues of patent misuse and consequent unenforceability since "the possession and assertion of patent rights are 'issues of great moment to the public.'" The implementation of this public policy is not "not at the mercy of the parties," but the Court should, even *sua sponte*, refuse to enforce patents which have been misused by attempting to extend the patent monopoly.

*Key Pharmaceuticals v. Lowey*, 373 F.Supp. 1190, 1193–94 (S.D.N.Y.1974) (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 815, 65 S.Ct. 993, 998, 89 L.Ed. 1381 (1945), quoting from *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 246, 64 S.Ct.

---

10. At the March 4, 1999 hearing, counsel for Texas Instruments, Mr. McEntee, was on the right track when he said: "Look, if a defense is only good when the judge decides against you, then that would mean that everybody who has a defense would have to wait until the judge—that makes no sense. That makes you part of the

misuse." *Transcript of March 4, 1999 Hearing*, p. 30, lines 9–13. While it may not make this Court part of the misuse, it does make this Court part of the decision to *plead* misuse—something Hyundai's lawyers are responsible for doing, not this Court.

997, 88 L.Ed. 1250 (1944)); *see also Tank Insulation Intern. v. Insultherm,* 104 F.3d 83 (5th Cir.1997), *cert. denied,* 522 U.S. 907, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997).

At yesterday's March 4, 1999 hearing, this Court succinctly voiced its concern over this particular motion: "My concern is the delay in bringing it up now. I have to look to the Fifth Circuit. It is very liberal on pleadings, *even if it is ... a tactical pleading, which obviously it is.*" *Transcript of March 4, 1999 Hearing,* pp. 30–31.

Accordingly, this Court reluctantly GRANTS Defendant *Hyundai's Motion for Leave to Amend its Answer* [250]. In Civil Action No. 2:98–cv–74, this Court BIFUR-CATES Hyundai's affirmative defense of patent misuse for a later trial.

Further, this Court HOLDS IN ABEY-ANCE *Defendants' Motion for Entry of Final Judgment Pursuant to Rule 54(b)* [99] in Civil Action No. 2:98–cv–73.

Finally, this Court ORDERS FURTHER BRIEFING on whether Texas Instruments is entitled to a trial by jury on the bifurcated affirmative defense of patent misuse in Civil Action No. 2:98–cv–74. Considering the parties are going to trial merely three days from now, this Court will inform them at a later date *when* these briefs are due.

It is SO ORDERED.